464 P.2d 410

**Tolbert J. LYON, Jr., Plaintiff-Appellant,**

**v.**

**CATRON COUNTY COMMISSIONERS, Employer, and Security Insurance Group and the St. Paul Insurance Companies, Insurors, Defendants-Appellees.**

**No. 350.**

Court of Appeals of New Mexico.

Oct. 31, 1969.

Rehearing Denied Dec. 9, 1969.

Certiorari Denied Jan. 21, 1970.

J. W. Reynolds, Robertson & Reynolds, Silver City, for appellant.

James C. Hall and Mary C. Walters, Toulouse, Moore & Walters, Albuquerque, Keleher & McLeod and Russell Moore, Albuquerque, for appellee.

## OPINION

SPIESS, Chief Judge.

This appeal is from a judgment denying a claim for workmen's compensation. In general, it is argued that certain of the findings of fact are not supported by substantial evidence and that certain findings of fact requested by claimant and having their basis in undisputed evidence were improperly refused. It is further contended that the conclusions of law flowing from the claimed erroneous findings of fact were improper as was the refusal of conclusions requested by claimant. The findings of fact and conclusions of law upon which error is predicated are as follows:

*Findings of Fact:*

"8. That at no time during his employment with defendant county did claimant suffer any further or other accident or injury after February 26, 1965, and that the only accident and any resultant injury occurring to plaintiff was February 26, 1965."

\*　\*　\*　\*　\*　\*

"12. That the claimant had a pre-existing lumbar condition which could

have been aggravated by the accident when the cattle guard feel [sic] on the claimant or by any other type of normal activity; that the claimant knew of no occurrence or incident after February 26, 1965, in which he was injured; that he related no history to any doctor of any accident or injury, other than that of February 26, 1965.

"13. That Dr. Minear's opinion that the claimant suffered a rupture sometime in March of 1966 is not related to any accident or incident which arose out of or in the course of his employment, based upon reasonable medical probabilities."

* * * * * *

"11. That at no time after February 26, 1965, did claimant ever give any written notice to defendant employer or Security Insurance Company of any accident or resultant injury; that the defendant employer, and/or the superintendent or foreman, did not have any actual notice of any accident and injury at any time after the incident of February 26, 1965."

*Conclusions of Law:*

"3. That the claimant did not suffer any other accident or resultant disability directly arising out of and in the scope of his employment apart from that which occurred on February 26, 1965."

* * * * * *

"6. That the plaintiff did not suffer an accidental injury after February 26, 1965 during the scope and course of his employment which is compensable under the provisions of the New Mexico's workmen compensation act."

* * * * * *

"4. That the plaintiff failed to prove, by reasonable medical probability, that he suffered any disability arising out of any accident occurring in the course of his employment after September 18, 1966, the effective date of defendant Security's insurance policy."

"5. That plaintiff failed to prove any causal relationship between any accident occurring after February 26, 1965, and any compensable injury."

* * * * * *

"1. That the claimant's claim for disability arising out of an accident on or about February 26, 1965, is barred by the statute of limitations.

"2. That the claimant did not give any written notice to the defendant employer of any accident or resultant disability at any time and that the defendant employer, its foreman and superintendents, did not have any actual knowledge or notice of any accident or disability suffered by the claimant at any time material herein."

As will appear, the question of whether an accident or "accidental injury" occurred other than the incident of February 26, 1965, to which the findings make reference, is interwoven with the issue of medical causation. We will consider as one issue the challenge to findings Nos. 8, 12 and 13, and the conclusions of law resulting therefrom, and after resolving this issue consideration will be given to claimant's objection to finding No. 11.

■■■ A review of findings of fact of the trial court in workmen's compensation proceedings is subject to the rule that such findings "shall not be disturbed if supported by substantial evidence." Gammon v. Ebasco Corporation, 74 N.M. 789, 399 P.2d 279 (1965). It is firmly established that conflicts in evidence must be resolved in favor of the successful party and evidence and inferences to the contrary must be disregarded. Irvin v. Rainbo Baking Co., 76 N.M. 213, 413 P.2d 693 (1966). When, however, facts are not in dispute and but one reasonable inference can be drawn therefrom, it is within the province of an appellate court to independently draw its own conclusion and overrule contrary conclusions of the trial court. Whitehurst v. Rainbo Baking Co., 70 N.M. 468, 374 P.2d 849 (1962). See Baca v. Swift & Co., 74 N.M. 211, 392 P.2d 407 (1964).

It follows that in these proceedings we are required to affirm the findings and conclusions of the trial court unless the facts are undisputed and the only conclusion that can reasonably be drawn therefrom is contrary to the conclusions drawn by the trial court. Accordingly, the question vital to this appeal is whether material facts essential to sustain an award of compensation are in dispute. We have, accordingly, reviewed the record.

It is undisputed that claimant, Tolbert J. Lyon, Jr., was employed by Catron County in the capacity of a foreman of one of the highway districts of the county. Lyon had been employed by the county for some seven years prior to the occurrence upon which his claim is based. His duties were supervisory as well as actually performing work essential to the maintenance of the county roads, which included installation of cattle guards and culverts, hauling gravel, operating a shovel, grader and trucks. Claimant's supervisor, and the person in charge of the work in Lyon's district at material times, was Ellsworth Tipton, a member of the Board of County Commissioners of the county.

During the month of February, 1965, claimant sustained injury to his back while undertaking to load a portion of a cattle guard upon the bed of a truck. As to this injury, claimant said:

"I had a little back trouble from the time the cattle guard fell on me until today. I still have it."

This particular injury was reported to Tipton, who undertook unsuccessfully to have claimant examined and treated by a medical doctor. No claim was made, nor compensation paid claimant on account of the cattle guard incident. We note here that St. Paul Insurance Companies, a named defendant at the time the claim was filed, insured Catron County through February of 1965. Thereafter, and during the occurrences hereinafter mentioned, compensation insurance was carried by the county with appellee, Security Insurance Group. A

summary judgment, from which no appeal was taken, was entered dismissing St. Paul Insurance Companies as a party to these proceedings.

From time to time following the accident of February, 1965, claimant suffered attacks of back pain. He did, however, perform his regular duties until March 18, 1966. During the first part of March, 1966, as a result of heavy snows and personnel changes, claimant ran the grader "pretty steady" until March 18th. With respect to the grader operation and its effect upon claimant, he testified:

"Q. Now how does this grader affect a person who is running it?

A. Well, you go along pretty smooth in the snow. On these mountains [sic] roads a lot of times you can't see the rocks and the stumps, you go along pretty good until you hit a stump or something then it will carry you sideways and jerk you around and throw you up, anybody who has run one will tell you that in the snow.

Q. In other words it jerks you about quite a bit?

A. Yes, a lot.

Q. Now, go back and tell me about the time that you were running this grader by yourself, more or less, when was that?

A. That was in March. The last week in March that I worked. The last day was the 18th so it would be the week before. I ran it steady that week. We went to Earl's and about the time we got the road open and got back, the road was full again and we had to go open it again. I was running a lot of hours and a long ways.

Q. Tell me about how your back was at this time?

A. Well the last week that I worked it got so bad I decided if I couldn't work anymore, it hurt so bad, I thought if I took off a while it would quit, that I would get over it if I didn't do nothing, but it did never quit.

Q. Now tell about this pain and how it affected you?

A. Well my leg went dead and I had a pain all the time in my right side and under my arm all the way down, my leg was dead. I could lay down a while and it would help, prop my feet up, but it finally got to where it didn't even help— that didn't help at all, so I had to do something.

Q. Now, can you recall when the pain got so intense that you just couldn't work any longer?

A. It would be a week before the 18th, it would be what. The 18th is when I decided I just couldn't put up with it. I couldn't do nothing. I would have to stop; the last trip coming in was on the 18th of March, coming from Earl Gilson's, and I had to stop four or five times and lay down and rest a while. I was afraid I was going to loose control of the grader."

Claimant consulted an orthopedic surgeon who diagnosed his trouble as a ruptured L5–S1 disc, for which he was operated. The doctor testified: "Now, I went ahead and did a myelogram which demonstrated the ruptured disc which he was operated on for that and fused at one level."

The following medical testimony is material:

"Q. Did you form an opinion as to the cause of Mr. Lyon's ruptured disc?

A. Well, all I know is that he said, in March, the pain was so severe, March, '66 that he had to quit working. And, sometimes, discs rupture without any apparent cause, but usually, it's due to heavy lifting of some substance of that sort.

Q Do you have any opinion as to whether or not there is any relationship between the ruptured disc and this cattle guard incident in February, 1965?

A. All I know is what you know, that he said his back hurt him after this incident, but not enough to seek medical treatment.

Q. I'm not sure I understand, though, Doctor. Is it your opinion then that the ruptured disc was caused by heavy work?

A. Well, he gave that history and this is a frequent cause of a ruptured disc."

\* \* \* \* \* \*

"Q. Well, let me put it in a different way. Do you have any opinion as to whether or not the February, 1965 cattle guard incident had anything to do with Mr. Lyon's ruptured disc?

A. Well, on examination of the X-rays, this disc was affected for some time, I would say, over a year before I ever saw him because it's quite narrow and you can't get a disc narrow in just a short time. It takes time, and there's also some spurring on the bone; so it's my opinion that the L5–S1 disc probably was involved in a degenerative process, which is common, probably even before the cattle guard incident.

Q. Then what affect [sic] did the cattle guard incident have on this?

A. Well, according to the history, his back hurt him after the cattle guard incident and since the degenerated disc represents a weak spot in the back, the likelihood is that he had pain. That's where he complained of pain, low back pain, but I didn't examine him at that time so I can't tell whether the pain was at L5–S1. But I could tell by looking at the X-rays that this was a degenerated disc, very likely, at the time of the cattle guard incident and, of course, naturally, at the time of the March 18th episode of low back pain. But it couldn't have been ruptured on to the nerve root at the cattleguard incident because his pain would have been so severe he would have had to seek medical attention.

Q. Well, it's your opinion that the actual rupture occurred sometime around March 18th?

A. Yes, on to the nerve root, yes."

\* \* \* \* \* \*

"Q. \* \* \* Is there any way you can tell with certainty what the cause of the ruptured disc was?

A. No, except that what the patient told me, because I wasn't there. I think the

rupture, true rupture, occurred in March, 1966, at the time he got the severe pain. I think it's reasonable to assume that this is when the rupture occurred, but I never got one incident like on a certain date, at a certain time: 'I slipped, lifting something, and got this sudden pain in my back and in my leg.' I haven't gotten that. All I know is that his statement is that this heavy equipment, working on this heavy equipment produced this. This is his opinion, and it could have, in my opinion, but I don't have any particular incident. Maybe he could think of one, but I haven't got one in my history."

The facts which we have related and disclosed by the quoted testimony are undisputed and with the exception of a statement of claimant to be hereinafter noticed cover all facts material to the issues involved. It is clear that the performance of physical labor, and in particular the operation of heavy equipment, was a requirement of claimant's job. The undisputed medical testimony is that the actual rupture of the disc occurred at the time intense pain was suffered by claimant. From the evidence given by the doctor and submitted at the trial, together with claimant's testimony, it appears that the rupture of the disc was caused through operating the grader and the time the actual rupture occurred was about the 18th of March, 1966. In our opinion there is no dispute as to the time the rupture occurred or that it was caused by employment. We hold that the facts are not in dispute and that they clearly support a finding that an accidental injury occurred in March, 1966, resulting in a ruptured disc, which injury arose out of employment; namely, operation of the grader required by the job.

In view of the undisputed evidence the finding that the claimant suffered no "further or other accident or injury after February 26, 1965" is wholly lacking in support and to our mind results from erroneously treating the term "accident" or "accidental injury" in a limited sense related only to some unexpected, unusual or untoward external force such as a blow or a fall.

In the sense of the statute, "accidental injury" or "accident" is an unlooked for mishap, or untoward event which is not expected or designed. Gilbert v. E. B. Law and Son, Inc., 60 N.M. 101, 287 P.2d 992 (1955); Aranbula v. Banner Min. Co., 49 N.M. 253, 161 P.2d 867 (1945); Webb v. New Mexico Pub. Co., 47 N.M. 279, 141 P.2d 333, 148 A.L.R. 1002 (1943); Stevenson v. Lee Moor Contracting Co., 45 N.M. 354, 115 P.2d 342 (1941).

It is unnecessary that a workman be subjected to an unusual or extraordinary condition or hazard not usual to his employment for an injury to be an accidental injury under the compensation act. Alspaugh v. Mountain States Mutual Casualty Co., 66 N.M. 126, 343 P.2d 697 (1959); Gilbert v. E. B. Law and Son, Inc., supra; Webb v. New Mexico Pub. Co., supra.

Based upon the reasoning of these cases we take it that a malfunction of the body itself, such as a fracture of the disc or tearing a ligament or blood vessel, caused or accelerated by doing work required or expected in employment is an accidental injury within the meaning and intent of the compensation act.

Larson in his treatise on the law of workmen's compensation says: "The 'by accident' requirement is now deemed satisfied in most jurisdictions either if the cause was of an accidental character or if the effect was the unexpected result of routine performance of the claimant's duties. Accordingly, if the strain of claimant's usual exertions causes collapse from * * * back weakness, * * * the injury is held accidental." 1A Larson, Workmen's Compensation Law, § 38.00 (1967).

The undisputed medical testimony which we have quoted attributes the rupture of the disc to claimant's work on the heavy equipment. Claimant's undisputed testimony pointing to the time and occurrence of the sudden and severe pain, coupled with

the medical testimony leave no doubt but that the fracture of the disc occurred during the last week claimant worked prior to March 18, 1966.

To our mind the medical testimony adequately meets the requirements of § 59–10–13.3, subd. B., N.M.S.A.1953.

"In all cases where the defendants deny that an alleged disability is a natural and direct result of the accident, the workman must establish that causal connection as a medical probability by expert medical testimony. No award of compensation shall be based on speculation or on expert testimony that as a medical possibility the causal connection exists."

■ Although the specific language contained in the statute was not employed by the medical witness, his testimony established the requisite causal connection as a medical probability. See Gammon v. Ebasco Corporation, supra.

The following further medical testimony appears in the record.

"Q. Doctor, taking into consideration the fact that Mr. Lyon did some heavy equipment operating, maybe more than usual, in the winter of 1965 and '66 and that he had a cattle guard fall on his back in February of 1965, and he may well have had a degenerative L5–S1 joint anyway, wouldn't it be speculation to relate his ruptured disc to any particular one of these three things?

A. No, I don't think so, because the severe pain came in March of 1966 and it's some incident during this time that —when the rupture had occurred; not the cattle guard incident. I think he had a degenerated disc at that time, but I think the rupture that caused his hospitalization occurred in March of 1966. That's my opinion.

Q. And the only thing you have to relate to that is work, normal work, is that correct?

A. Yes."

The undisputed facts lead conclusively to the conclusion that the claim is compensable. Further, we see nothing in the evidence from which it can be said that a causal relationship existed between the cattle guard incident and the ultimate rupture of the disc.

■ It is true that claimant testified in substance that he knew of no occurrence after February 26, 1965, in which he was injured and in effect undertook to relate the final back injury to the cattle guard incident of February, 1965. It is equally true that claimant said the intense pain occurred as he was operating the grader on or about March 18, 1966. We see no factual dispute resulting from claimant's testimony.

■ Appellee suggests, in substance, that the trial court was at liberty to reject undisputed expert opinion and a finding contrary thereto is binding on the appellate court on authority of Salazar v. Lavaland Heights Block Co., 75 N.M. 211, 402 P.2d 948 (1965). The effect of this decision was considered in Ross v. Sayers Well Servicing Co., 76 N.M. 321, 414 P.2d 679 (1966). The court said: "* * * where medical opinion based on the facts has been expressed and is uncontradicted, the evidence is conclusive upon the court as trier of the facts."

We hold that a compensable claim has been established and findings and conclusions to the contrary are not substantially supported. Further, that a causal relationship between the accident occurring in March of 1966, and the disability was sufficiently established to meet the requirements of § 59–10–13.3, subd. B, supra.

We next consider claimant's objection to finding No. 11, which involves a question of whether the person in charge of the work had actual knowledge of the occurrence of the accident and injury.

Claimant, of course, does not contend that written notice of accident and injury was given to claimant's employer. It is his position that the person in charge of the work, namely, Ellsworth Tipton, had such actual knowledge of the accident and

compensable injury as satisfies the requirement of § 59–10–13.4, subd. B.

"No written notice is required to be given where the employer or any superintendent or foreman or other agent in charge of the work in connection with which the accident occurred had actual knowledge of its occurrence."

In Baca v. Swift & Co., supra, the court recognized that a verbal reporting of an accident and injury may be sufficient to satisfy the requirements of the statute.

■ We recognize that the knowledge which will excuse written notice must be of an accident and compensable injury. Roberson v. Powell, 78 N.M. 69, 428 P.2d 471 (1967).

In further considering the statute which we have quoted the court in Waymire v. Signal Oil Field Service, Inc., 77 N.M. 297, 422 P.2d 34 (1966), held that conduct on the part of an employee or agent in charge of the work may be sufficient to warrant a reasonable inference that he had actual knowledge of the accident and injury.

The testimony supplied by Ellsworth Tipton, together with the trial court's ruling with relation to such testimony is material. We quote the following from the record.

"Q. Did Mr. Lyon quit work in March of 1966?

A. Yes.

Q. Do you know why he quit work?

A. Yes.

Q. Why?

A. Because his back was injured.

Q. Did he report that to you?

A. Yes, he did.

Q. Did you give him any instructions on what to do?

A. Yes, I told him to come up here to the County Clerk and fill out an application form and go on and have his back taken care of, that the insurance company would take care of the bill.

*Mr. Casados:*

I would object to any statements of this nature on the grounds that Mr. Tipton is not qualified to state, he has no authority to state whether or not the insurance company would take care of it. It's a self-serving statement.

*Mr. Reynolds:*

All I am doing, Your Honor, I am asking him what he said if he said anything.

*The Court:*

Yes. I doubt if his opinion would make any difference. I don't think it's an issue here as to whether Mr. Lyon relied on that. I am going to sustain the objection."

■ Tipton's excluded statement, in our opinion, was clearly relevant as tending to show knowledge on his part of the accident and a compensable injury. See Waymire v. Signal Oil Field Service, Inc., supra, and Lozano v. Archer, 71 N.M. 175, 376 P.2d 963 (1962). Since the court sustained the objection to that portion of Tipton's testimony which would tend to show knowledge on his part of the accident and injury we cannot but feel that no consideration was given to the statement by the court in making finding No. 11 and the conclusion No. 2.

Had the trial court considered Tipton's statement it might well have been of a different view than that expressed in finding No. 11 and conclusion No. 2.

For the reasons above stated, the judgment is reversed and the cause remanded to the trial court for a determination pertaining to the right of compensation and for a reconsideration of finding No. 11 and the conclusion based thereon.

It is so ordered.

WOOD and HENDLEY, JJ., concur.