483 P.2d 936

Annie QUINTANA, Widow of Nazario L. Quintana, Jr., on behalf of herself and Orlando A. Quintana, a minor, Plaintiffs-Appellees,

v.

EAST LAS VEGAS MUNICIPAL SCHOOL DISTRICT, Employer, and United States Fidelity and Guaranty Company, Insurer, Defendants-Appellants.

No. 530.

Court of Appeals of New Mexico.

March 19, 1971.

Frank Andrews, III, Montgomery, Federici, Andrews, Hannahs & Morris, Santa Fe, for appellant.

Donald A. Martinez, Las Vegas, for appellee.

## OPINION

HENDLEY, Judge.

Defendants appeal from a judgment awarding claimants, employee's widow and minor son, an additional award of 10% of the amounts defendants were paying plaintiffs because of defendant employer's failure to provide a safety device, namely, insulated rubber gloves. Defendants give three points for reversal.

We affirm.

The decedent was employed as a maintenance man for defendant-employer. On the day of the fatal accident, decedent and a fellow employee were directed to remove some bell wires running between two school buildings and supported by two poles. The poles belonged to Public Service Company and were used as high voltage electrical distribution lines. The bell wire, when working, carried 24 volts but was being removed because it did not work. During the course of removing the bell wire decedent came in contact with the high voltage electrical distribution lines and was electrocuted.

The trial court found that:

"4. That in the regular course of his duties said decedent was frequently assigned to work with electrical wires maintained by the defendant-employer and which were strung on poles belonging to the Public Service Company of New Mexico, and which poles carried the high voltage power lines of that company's electrical distribution system.

"5. That decedent's fatal injuries were suffered while he was working on the electrical wires of defendant-employer on the poles of the Public Service Company of New Mexico, to which task he has been specifically assigned by his immediate supervisor, and that his injuries and

death were caused by the failure of defendant-employer to provide a reasonable safey device, to wit: insulated rubber gloves, the same being in general use for the protection of workmen working on poles carrying high voltage power lines, and that the poles on which decedent was so working carried high voltage power lines, and that defendant-employer at all times material hereto knew that said poles carried said high voltage power lines."

Defendants challenge these findings on the grounds that they were not supported by substantial evidence.

Section 59–10–7 B, N.M.S.A.1953 (Repl. Vol. 9, pt. 1) states:

"B. In case an injury to, or death of a workman results from the failure of an employer to provide safety devises required by law, or in any industry in which safety devices are not prescribed by statute, if an injury to, or death of, a workman results from the negligence of the employer in failing to supply reasonable safety devices in general use for the use or protection of the workman, then the compensation otherwise payable under the Workmen's Compensation Act shall be increased ten per cent [10%]."

■ In reviewing workmen compensation cases we consider only evidence and inferences that may be reasonably drawn therefrom, in the light most favorable to support the findings. Adams v. Loffland Brothers Drilling Company, 82 N.M. 72, 475 P.2d 466 (Ct.App.1970).

In attacking the above findings and in asserting the trial court should have adopted their requested findings, defendants raise questions (1) as to the "industry" in which decedent was engaged and (2) failure to provide a safety device in general use in that industry.

It is undisputed that decedent, employed as a maintenance man, worked on bell wires which were near high voltage power lines. There is no evidence that working on high voltage lines was a part of decedent's duties. The distinction defendants would have us make is between working *near* and working

*on* the high voltage lines. On the basis that the "industry" in which decedent was engaged was working "near" high voltage lines, defendants say there is no evidence that the safety device involved—insulated gloves—was in general use in that industry. The evidence, according to defendants, is that the insulated gloves were in general use only where the employee worked "on" high voltage lines.

■ The narrow meaning that defendants ascribe to "industry" is contrary to Briggs v. Zia Company, 63 N.M. 148, 315 P.2d 217 (1957) where it is stated that "[t]o narrow the term 'industry' to specific examples of uses * * * would be too restricted." Consistent with *Briggs*, the "industry" involved here is not work near a high voltage line and is not work on a high voltage line, but work exposing the decedent to the dangers of high voltage lines.

With this definition of "industry," the question is whether the insulated gloves were a reasonable safety device " * * * in general use for the use or protection of the workmen. * * *" Section 59–10–7 B, supra.

■ There is evidence that the gloves were a safety device for " * * * workmen who are working around such lines * * *" and evidence that they are in "general use" for working "on" such lines. See Romero v. H. A. Lott, Inc., 70 N.M. 40, 369 P.2d 777 (1962). This evidence permits the inference and sustains the finding that the gloves were "in general use for the protection of workmen working on poles carrying high voltage lines."

Defendant next contends that Finding No. 5 is not supported by substantial evidence in that it was not established that the failure to furnish insulated rubber gloves was the cause of the employee's death. Defendants rely on the testimony of Dr. Blough regarding the location of decedent's burns. There were burns over the right shoulder, the front aspect of the right and left elbow, the web space between the thumb and index finger of the right

hand, and near the tips of the thumb and index finger of the left hand.

Defendants state that their submitted and refused Finding No. 5 was proper. It stated:

"No evidence was adduced that failure to provide insulated rubber gloves was the cause of the workman's death."

Defendants further state that "death could have been caused by any of the burns received by the decedent and there is no evidence in the record to establish the necessary causal connection."

This court does not weigh conflicting evidence or credibility of witnesses but will only view such evidence and inferences to be drawn therefrom as will support the findings. Forrest Currell Lumber Company v. Thomas, 81 N.M. 161, 464 P.2d 891 (1970).

 There was evidence direct and circumstantial from which the trial court could draw a reasonable inference that the lack of gloves was the causal connection. There was testimony that the distance between the bell wire and the high voltage line was 18 to 20 inches; that from the position of the ladder against the pole one's head and shoulders would not come in contact with the high voltage line; that one could reach out and touch the line "if you stretch." There was testimony that when decedent was first seen after the electric shock he was standing on the ladder with his arms outstretched. There was testimony that if wearing the insulated gloves one's hands and a short ways up the arm would be protected. From this evidence the trial court could infer that decedent first came into contact with the high voltage line when he reached out with his ungloved hands.

Defendants' third point is that for plaintiffs to recover under § 59–10–7 B, supra, they must prove a causal connection, to a medical probability, as required in § 59–10–13.3, N.M.S.A.1953 (Repl.Vol. 9, pt. 1).

Since plaintiffs introduced no medical testimony they say such proof is lacking.

What defendants seek to do is incorporate the requirements of § 59–10–13.3, supra, into § 59–10–7 B, supra. Specifically, they claim they are not liable for additional compensation for failure to supply reasonable safety devices, when they deny that liability, unless plaintiffs prove as a medical probability, that the cause of decedent's fatal injury was the failure to provide the reasonable safety devices. Applying this contention to the facts, they claim we can only speculate as to which of the burns caused the death and, therefore, there is no proof that burns resulting from absence of the gloves caused decedent's death.

 The medical probability requirement of § 59–10–13.3, supra, applies where it is denied that the disability (here, the death) is the natural and direct result of the accident. Medical probability under § 59–10–13.3, supra, was not involved in this case because defendants admitted the causal connection between the accident and the death. Section 59–10–7 B, supra, does not go to the causal relationship between the death and the accident. It goes to the causal relation between the death and the failure to supply reasonable safety devices. Section 59–10–7 B, supra, does not require the causal relation between the death and the lack of safety devices to be proved to a medical probability. Nor can we incorporate such a requirement by equating the accident (which is coming into contact with the high voltage lines) with lack of the safety device (which is the absence of the insulated gloves). Such an equation is not permissible because they are different matters. There is no merit to this contention.

The award of compensation is affirmed with an additional award to plaintiff of $1,250.00 for the services of his attorney in this appeal. Section 59–10–23 D, N.M. S.A.1953 (Repl. Vol. 9, pt. 1).

It is so ordered.

SPIESS, C. J., and WOOD, J., concur.