561 P.2d 493

**A. W. (Buck) MOORHEAD,
Plaintiff-Appellee,**

v.

**GRAY RANCH COMPANY, d/b/a Pruett-Ray Cattle Company, d/b/a Victorio Land and Cattle Company and Industrial Indemnity Company, Defendants-Appellants.**

**No. 2646.**

Court of Appeals of New Mexico.

Feb. 8, 1977.

Rehearing Denied Feb. 21, 1977.

Certiorari Denied March 17, 1977.

Gary Jeffreys, Hughes & Jeffreys, Deming, for appellants.

Frederick H. Sherman, Sherman & Sherman, Deming, for appellee.

## OPINION

LOPEZ, Judge.

The defendants appeal a workmen's compensation judgment awarded to the plaintiff (hereinafter referred to as Moorhead)

for total and permanent disability at the rate of $75.00 per week for 500 weeks commencing January 14, 1975. We affirm.

For reversal, the defendants present several points which may be summarized by the following four issues: (1) causation; (2) total disability; (3) notice; and (4) rate of compensation.

*Causation*

The plaintiff was employed by the defendants as a cowboy. On or about September 4, 1973, he was riding a horse which fell on him. The defendants challenged the court's findings of fact regarding causation. These findings are Nos. 3, 5 and 7:

"3. On September 4, 1973, while herding stray cows for Gray Ranch, a cow ran under Moorhead's horse, dumping the horse and Moorhead, causing the horse to roll on top of Moorhead and thereby causing a disabling injury to Moorhead.

".    .    .

"5. Moorhead returned to his work and performed his duties at a decreased pace and performed lighter duties as a cook in round up.

".    .    .

"7. Moorhead suffered an injury in the course of his employment from several days of hard riding up to January 13, 1975, and which aggravated the pre-existing arthritic condition of Moorhead's knees, causing him to be totally and permanently disabled."

Other pertinent findings of fact by the court are Nos. 2, 9 and 12:

"2. Moorhead commenced work for the Gray Ranch on December 1, 1970, and worked steadily for Gray Ranch as a ranchhand up until January 13, 1975 [the date the court found Moorhead to be disabled totally].

".    .    .

"9. Each of Moorhead's knees are totally and permanently disabled and Moorhead is totally and permanently disabled from performing as a ranch employee or from any job requiring any strength, agility, or significant use of his legs.

".    .    .

"12. Medical bills for the treatment of Moorhead's knees up to and including the report of January, 1975, have been paid by Industrial Indemnity Company [the workmen's compensation insurance carrier for Gray Ranch]."

Defendants allege that plaintiff failed to prove as a medical probability that the plaintiff's disability was caused by the accident of September 4, 1973. Defendants alleged that plaintiff failed to comply with § 59–10–13.3 B, N.M.S.A.1953 (2d Repl. Vol. 9, pt. 1, 1974), which reads as follows:

"In all cases where the defendants deny that an alleged disability is a natural and direct result of the accident, the workman must establish that causal connection as a medical probability by expert medical testimony. No award of compensation shall be based on speculation or on expert testimony that as a medical possibility the causal connection exists."

The defendants requested certain findings of fact, but before we consider these requested findings, we must review the findings of the trial court. If there is substantial evidence to support the findings, they shall not be disturbed. *Duran v. New Jersey Zinc Co.,* 83 N.M. 38, 487 P.2d 1343 (1971); *Gammon v. Ebasco Corporation,* 74 N.M. 789, 399 P.2d 279 (1965); *Lyon v. Catron County Comm'rs,* 81 N.M. 120, 464 P.2d 410 (Ct.App.1969). In reviewing a workmen's compensation case, it is a cardinal rule of appellate procedure that we will consider the evidence, and the inferences that may be drawn reasonably therefrom, in the light most favorable to support the findings. *Quintana v. East Las Vegas Municipal School Dist.,* 82 N.M. 462, 483 P.2d 936 (Ct.App.1971). Substantial evidence is evidence which a reasonable mind accepts as adequate to support a conclusion. *Tapia v. Panhandle Steel Erectors Co.,* 78 N.M. 86, 428 P.2d 625 (1967).

The defendants agree that Dr. Breck and Dr. Luckett gave somewhat conflicting testimony as to the causation of plaintiff's disability. The defendants state that Dr. Luckett's testimony cannot connect the accident with the disability, and that Dr.

Breck's opinion of causal connection is based upon mere speculation and should be disregarded. Dr. Hossley examined Moorhead on September 5, 1973, the day after Moorhead was thrown from the horse. Dr. Hossley testified, by deposition, that he probably told Moorhead to go see Dr. Breck, an orthopedic specialist.

Briefly, Dr. Breck testified, by deposition, that in his opinion Moorhead's knee troubles had developed gradually over a period of quite a few years. In his opinion, the accident of September 4, 1973, substantially aggravated Moorhead's previous condition, the accident being the precipitating or final cause of Moorhead's total disability which occurred on or around January 13, 1975. Dr. Breck testified that Moorhead was suffering from severe to moderate degenerative, traumatic arthritis when the doctor first saw him. Nonetheless, the doctor permitted Moorhead to continue at his job as long as it was not too strenuous. The doctor was surprised that Moorhead could work at all after his September 4, 1973 accident. The doctor knew that Moorhead's knees were headed for trouble and they might eventually need a total knee-joint replacement; nonetheless, the doctor chose to pursue a conservative treatment, permitting Moorhead to work as long as he could because any operations at that time would have prevented Moorhead from working at all. However, on January 17, 1975, it became evident to Dr. Breck that the knees had sustained severe damage and he pronounced Moorhead totally disabled. In Dr. Breck's opinion the injury was related to Moorhead's work as a cowboy. This testimony effectively refutes defendants' contention that plaintiff's disabilities were the result of his own injurious practices.

Dr. Luckett, an expert witness for the defense, testified that it was abundantly clear both of Moorhead's knees had received a lot of injury over his lifetime. Dr. Luckett testified to the severity of the damage which Moorhead's knees had sustained, but insisted that it was impossible for anyone to determine how much of the damage was attributable to one specific accident. Dr.

Luckett did agree that it was reasonable to assume the accident of September 4, 1973, could produce a good deal of aggravation.

In a letter, introduced into evidence, from Dr. Luckett to Mr. Gary Jeffreys, defendants' attorney, Dr. Luckett wrote:

"In summary we have a 59 year old cowboy [Moorhead] who in a rather typical ranch accident had a horse run over a cow and fall rolling multiple times and crushing and twisting the rider's legs, the left more than the right.

".    .    .

"Physical examination certainly confirms the presence of two very severely deteriorated knees.    .    .    .    The right knee is one of the most severely deteriorated knees that I have examined in my entire [orthopedic] career and though the left knee presents evidence of significant severe deterioration and damage, it cannot in my opinion at this time be compared to the right.    .    .    ."

".    .    .

"There is absolutely no question about the fact that the man's two knees are so severely damaged as to effectively prevent him from being of any use as a ranch employee. His only possibility of gainful employment would be in some sedentary job not requiring strength, agility, or significant use of the legs. Obviously a great many of the changes in both knees must have antedated by some degree the accident with which    .    .    . we are concerned, specifically, the one of the 4th September 1973."

Dr. Luckett went on to say that it was virtually impossible to separate the percentage of Moorhead's injury which could be attributed to the accident of September 4, 1973. The doctor concluded: "Obviously .    .    . both knees had some preexisting damage and equally obviously both of them are now nonfunctional in his former occupation."

Dr. Luckett's opinion, based upon a reasonable medical probability, was that the onset of Moorhead's disabling arthritic condition was sometime in 1974. He came to this opinion because there were no prior

complaints or seeking of medical treatment for the knees prior to 1974.

■ We believe it is not our duty to weigh the testimony of these doctors. That is the duty of the trier of fact. One of the cases cited by defendant is *Montano v. Saavedra,* 70 N.M. 332, 373 P.2d 824 (1962), in which the Supreme Court said:

"True enough, there was testimony of the medical expert from which the trial court might have found otherwise. Nevertheless, it was for the trial court, as the fact finder, to evaluate all the evidence and determine where the truth lay."

According to defendants, the opinion of the doctors is nonprobative, as far as medical probability, in establishing causal connection. There is testimony on record that before 1973, plaintiff had other accidents. There is also testimony to indicate that these accidents or falls were slight. The defendants also argue that accidents which plaintiff may have had after 1973 were the ones which caused the disability. In particular, there was testimony that hard riding activities in January of 1975 were a contributing factor which aggravated a preexisting condition, causing Moorhead to become totally disabled. There was testimony from Dr. Breck that the accident in 1973 aggravated the preexisting knee condition. Moorhead continued to perform light work, but during the month of January of 1975, due to hard riding, his injury was aggravated to the point of total disability. There is substantial evidence to establish a causal connection between the accidental injury and the resulting disability, even though the injury is attributable in part to a preexisting condition. See *Reynolds v. Ruidoso Racing Assoc., Inc.,* 69 N.M. 248, 365 P.2d 671 (1961); *Webb v. New Mexico Publishing Co.,* 47 N.M. 279, 141 P.2d 333 (1943). See also, *Shannon v. Sandia Corp.,* 79 N.M. 634, 447 P.2d 514 (1968).

### Total Disability

■ The trial court's conclusion that the plaintiff is totally and permanently disabled is supported by substantial evidence.

### Notice

■ The defendants do not deny that the plaintiff had an accident on September 4, 1973, but they deny notice of injury to the knees was given in 1973. The defendants state they received no notice of an accident relating to a knee injury as required by § 59–10–13.4, N.M.S.A.1953 (2d Repl. Vol. 9, pt. 1, 1974):

"*Notice to employer.*—A. Any workman claiming to be entitled to compensation from any employer shall give notice in writing to his employer of the accident and of the injury within thirty [30] days after their occurrence . . . ."

We believe that the defendants would ask this Court to require the plaintiff to give notice of an injury to the knee which the plaintiff didn't know had resulted after the accident in 1973. The record reveals that notice was given as to total and permanent disability in January of 1975. Under *Beckwith v. Cactus Drilling Corp.,* 84 N.M. 565, 505 P.2d 1241 (Ct.App.1972) it was not necessary for the plaintiff to give notice of an injury to the knee or knees after the 1973 accident. All the plaintiff was required to do was give notice of the accident. Notice was given because the defendants had actual knowledge of the 1973 accident. In *Beckwith* the Court of Appeals said:

". . . Yet, the Legislature, by the change enacted in 1959, eliminated the requirement of actual knowledge of injury. If this change defeats the purpose of notice requirements, it is a matter for legislative consideration."

We believe that under *Beckwith,* as long as there was actual knowledge of the accident, this complies with the notice requirement. The record shows notice was also given of total disability in 1975.

The record shows there were oral conversations notifying the foreman that the defendant had sustained an injury. See § 59–10–13.4 B, supra. For this reason Moorhead was put on light work. For two years, when Moorhead rode a horse, his injury was aggravated.

After Moorhead visited Dr. Breck in 1975, the doctor wrote the foreman and the insurance company to notify them of Moorhead's disability. The trial court concluded:

"2. Proper notice was given Gray Ranch of the accident of September 4, 1973, and proper notice was given of the accident which aggravated Moorhead's pre-existing condition and which caused permanent disability on January 13, 1975."

This conclusion is supported by substantial evidence.

*Rate of Compensation*

█ Defendants argue that the rate of compensation should be based on the statute at the time of the accident and not at the time of the disability. We disagree.

In a recent case handed down by this Court, *De La Torre v. Kennecott Corp.*, 89 N.M. 683, 556 P.2d 839 (Ct.App.1976), it was held that the date of disability is critical and the law effective at that time controls. But see *Davis v. Meadors-Cherry Co.*, 65 N.M. 21, 331 P.2d 523 (1958). Therefore, *De La Torre* is authority for the proposition that the rate of compensation should be based upon the applicable law on the date of disability. In this case, total disability commenced in January of 1975 and the rate of compensation should be based upon the statutory rate in effect at that time.

Judgment of the trial court is affirmed. Plaintiff is awarded $1,750.00 for the services of his attorney on appeal.

IT IS SO ORDERED.

SUTIN, J., specially concurring.

HERNANDEZ, J., concurs.

SUTIN, Judge (specially concurring).

*I concur in the result.*

Before an appeal is taken, a party and his attorney must strongly believe that the claimed error is plain, obvious, sharp, unmistakable, apparent and manifest. Emotional resurgence that arises at the loss of a case below should not impel a party or his attorney to appeal. When this occurs without manifest error, memorandum opinions flow from this Court as swiftly as the Mississippi River.

This admonition must be observed to warrant consideration of reversal on appeal. The primary duty of an appellate court is to affirm judgments below even though judgments are rendered for wrong reasons.

The forty page brief of defendants and the thirty-seven page answer brief of plaintiff are beyond the number allowed by the appellate rule. They show great time and conscientious effort pointlessly because the argument was not based on the simple issues in this case.

I recognize that this admonition is of little value. An unnecessary appeal is a common practice that cannot be solved. To meet this challenge requires wisdom, experience and common sense. "Common sense is very uncommon." I shall repeat this admonition as often as I believe it necessary to educate some members of the profession that "justice on appeal" deserves common sense, not mere rivalry. Carrington, Meador and Rosenberg in Justice on Appeal, at 91, say:

As we have seen, hopeless appeals can clog the judicial system and cause an erosion of the process which results in less adequate justice for those appellants who do have substantial questions to raise. Hopeless cases tend to produce unreadable briefs, soporific arguments, and impatient decisions. They are demoralizing to counsel and to judges. While it is perfectly true that they require less time and energy for disposition, this fact itself represents a basic cheapening of the process. Every care must be taken to observe all of the imperatives of appellate justice in dealing with every case having any plausible merit, but this goal can scarcely be achieved without taking some care to manage the tide of hopeless cases.

The trial court found:

7. Moorhead suffered an injury in the course of his employment from several days of hard riding up to *January 13, 1975*, and which aggravated the pre-exist-

ing arthritic condition of Moorhead's knees, causing him to be totally and permanently disabled.

8. On *January 17, 1975*, Moorhead was examined by Dr. Breck, who in a letter to defendant, Industrial Indemnity Company, on *January 21, 1975*, described the condition of Moorhead's knees, found Moorhead totally and permanently disabled, and notified that Defendant that Moorhead's disability was related to his employment with Gray Ranch.

The court concluded:

2. Proper notice was given Gray Ranch . . . of the accident which aggravated Moorhead's pre-existing condition and which caused permanent disability on *January 13, 1975.*

\*   \*   \*   \*   \*   \*

4. Moorhead is totally and permanently disabled by reason of an injury in *January, 1975* . . .. [Emphasis added]

Defendants did not challenge finding No. 8. Defendants were given due notice of the accident and injury. Written notice to defendants' insurance carrier by Dr. Breck was sufficient compliance with § 59–10–13.4, N.M.S.A.1953 (Repl. Vol. 9, pt. 1); *Anaya v. Big Three Industries, Inc.*, 86 N.M. 168, 521 P.2d 130 (Ct.App.1974).

There was substantial evidence to support the findings. All testimony and evidence of events that occurred prior to the accident of January 13, 1975 are superfluous.