596 P.2d 521

**Ramon R. CASIAS, Plaintiff-Appellee,**

v.

**The ZIA COMPANY, Employer, and United States Fidelity and Guaranty Company, Insurer, Defendants-Appellants.**

**No. 3842.**

Court of Appeals of New Mexico.

May 17, 1979.

Walter J. Melendres, John K. Silver, Montgomery, Andrews & Hannahs, Santa Fe, for defendants-appellants.

John Wentworth, Steven L. Tucker, Jones, Gallegos, Snead & Wertheim, Santa Fe, for plaintiff-appellee.

OPINION

WALTERS, Judge.

Appellants urge that plaintiff-appellee Casias was awarded total disability benefits

at an incorrect rate because the accident occurred on October 7, 1976 and he became totally and permanently disabled on August 28, 1977, during which time the percentage of the average weekly wage in the state (see § 52–1–41(A), N.M.S.A.1978), upon which maximum compensation is based, increased from 78% to 89%. Appellants contend the lower rate should have been applied against the average weekly wage on October 7, 1976 because § 52–1–20, N.M.S.A.1978, provides for determination of the weekly wage "at the time of the accident."

It appears, from an analysis of the two sections above referred to, that the terms "time of the accident" (§§ 52–1–20 A, –20 B(1), –(2), –(3), and –(4); "time of injury" (§ 52–1–20 B); "date of disability" (§ 52–1–40); and "date of accidental injury" (§ 52–1–40), were used by the Legislature in the Workmen's Compensation Act with some lack of selectiveness. It, of course, is more frequently the case in workmen's compensation suits that the date of the accident, the injury, and the disability, all coincide. But when there is a lapse of time between any of those incidents, appeals of the present nature have resulted and they have become the fiber from which the decisions of La-Mont v. New Mexico Military Inst., 92 N.M. 804, 595 P.2d 774 (Ct.App., 1979); Herndon v. Albuquerque Pub. Schools, 92 N.M. 635, 593 P.2d 470 (1978) (rev'd on issue of attorney fees only)); Moorhead v. Gray Ranch Co., 90 N.M. 220, 561 P.2d 493 (Ct.App.1977); and De La Torre v. Kennecott Copper Corp., 89 N.M. 683, 556 P.2d 839 (Ct.App.1976), were fashioned. Each of those cases either interpreted the limitation section of the Act [now § 52–1–31, N.M.S.A.1978] to commence running when "the disability is discovered rather than from the accidental occurrence," De La Torre, supra at 686, 556 P.2d at 842, or that rate of compensation is "based upon the applicable law on the date of disability" rather than at the time of the accident, Moorhead, supra, 90 N.M. at 224, 561 P.2d at 497, because if the claimant suffers an accident in the course of his employment which does not disable but ultimately leads to a later "malfunction of the body" resulting in disability, the continuing pain and degenerating ability to function constitute the operative "accident" which brings about the compensable "accidental injury" on the date of disability, Moorhead; Herndon, supra.

Judge Sutin, in the Herndon opinion cited above, discussing the issue of "accidental injury" within the factual context of plaintiff's fall on June 4, 1975 and her inability to continue work on September 2, 1975, wrote:

Defendants argue that no decision in New Mexico "holds that any condition which develops pain but which does not result in malfunction of the body is 'injury caused by accident,' as required by Section 59–10–6 * * *."

In support of this position, defendants rely strongly on Towle v. Department of Transportation, State Highway, 318 A.2d 71 (Me.1974) where the court held that a claimant, a street sweeping operator, who suffered a postural strain over a period of time had not suffered a "personal injury by accident arising out of and in the course of his employment." We note, however, that the court also stated that if the stress of labor aggravates or accelerates the development of a preexisting infirmity causing an internal breakdown of that part of the structure, a personal injury by accident does occur. This rule in Towle is the rule in New Mexico and applicable to the facts in the instant case. * * *

*     *     *     *     *     *

As we read Lyon [Lyon v. Catron County Commissioners, 81 N.M. 120, 464 P.2d 410] today, a workman has suffered an accidental injury if he (1) experiences preexisting back pain from a previous accident incurred during his employment, (2) continues in his normal employment under pain, (3) and subsequently suffers a ruptured disc evidenced by a severe nerve root pain, (4) which ruptured disc is caused or accelerated while working.

In the instant case, the accident was the strain on plaintiff's back initiated by

the fall on June 4, 1975; the injury was the severe pain that disabled her. If this strain caused or accelerated a "collapse" from back weakness, it was a malfunction of the body and plaintiff suffered an accidental injury; if it did not, it was not accidental. Whether the injury was accidental due to the strain over a three month period of time was an issue of fact decided in plaintiff's favor.

It is necessary to reconcile these decisions relating to statute of limitation, date of injury, and rate of compensation issues, because at first blush one might believe that entirely different propositions were determined and should not be confused. We believe the decided cases have refined the meaning of entitlement to and the amount of compensation to some very basic principles, the Court always having in mind that the Act itself expresses the intention and policy of this State that employees who suffer disablement as a result of injuries causally connected to their work, shall not become dependent upon the welfare programs of the State, *Codling v. Aztec Well Servicing Co.*, 89 N.M. 213, 549 P.2d 628 (Ct.App.1976), but shall receive some portion of the wages they would have earned, had it not been for the intervening disability, *LaMont, supra*; and that the fundamental reason for its adoption was to protect the workman, *Clark v. Electronic City*, 90 N.M. 477, 565 P.2d 348 (Ct.App.1977). Those principles may be summarized as follows:

(1) The statute of limitation does not begin to run when a non-disabling accident occurs, but rather when the workman knows or should know that he has sustained a compensable injury as a result of the accident. *Duran v. New Jersey Zinc. Co.*, 83 N.M. 38, 487 P.2d 1343 (1971); *De La Torre, supra.*

(2) Compensation is not payable until and unless a work-related accident produces an injury which becomes disabling. *Willcox v. United Nuclear Homestake Sapin Co.*, 83 N.M. 73, 488 P.2d 123 (Ct.App.1971); *Pacheco v. Springer Corp.*, 83 N.M. 622, 495 P.2d 800 (Ct.App.1972); *Gomez v. Hausman Corp.*, 83 N.M. 400, 492 P.2d 1263 (Ct.App.1971); *LaMont, Herndon, supra.*

(3) The disabling event may occur many months or years after the work-related accident, *LaMont, Gomez, supra*, and then become compensable; or it may be the product of a new "accident" resulting from the bodily malfunction ultimately induced by the original injury, *Herndon; Moorhead; De La Torre, supra.*

(4) The rate of compensation, being intended to bear some relationship to the workman's wage earning capacity, *Kendrick v. Gackle Drilling Co.*, 71 N.M. 113, 376 P.2d 176 (1962), is measured as of the time that wage-earning capacity is affected, i. e., the date of disability. *LaMont; Moorhead, supra.*

The logic which dictates that the reasoning expressed in the decided cases be considered together, with respect to limitations and rate of compensation, is demonstrated by pointing out that under § 52–1–29 the employee must, with one exception, give notice "of the accident *and* of the injury within thirty days after *their* occurrence," but "at all events not later than sixty days after the occurrence of the *accident.*" These requirements have been interpreted to equate "accident" with "injury" in those cases where a latent injury is suffered, simply because an eligible workman shall not be required to report every accidental incident, whether disabling or not, at the peril of losing benefits for failure to do so should he at some later time become disabled from a seemingly insignificant incident. The court's discussion on this matter in *Montell v. Orndorff*, 67 N.M. 156, 353 P.2d 680 (1960), is illustrative of the policy considerations for such an interpretation. The construction there adopted has long been followed in this jurisdiction, e. g., *Langley v. Navajo Freight Lines, Inc.*, 70 N.M. 34, 369 P.2d 774 (1962); *Brown v. Safeway Stores, Inc.*, 82 N.M. 424, 483 P.2d 305 (Ct.App. 1970). It was stated flatly, in *Anaya v. Big*

*Three Industries, Inc.*, 86 N.M. 168, 521 P.2d 130 (Ct.App.1974), that "[c]ompensation is paid only when there is a disability." It is clear from these cases that "date of accident" and "date of injury" have come to mean "date when compensable injury manifests itself."

Thus, to apply the same construction to all of the provisions of § 52–1–20 is not unique or startling. Subsection A defines "wages" as the money rate at which services are recompensable under the contract of hire "at the time of the accident." Subsection B requires computation of benefits upon the monthly, weekly, daily or hourly remuneration which the workman was earning "at the time of the injury." The further subsections under B all refer to "time of the accident." It is apparent that the Legislature used the two terms interchangeably and indiscriminately. We, therefore, apply the meaning "date when the compensable injury manifests itself" or "date when the workman knows or should know he has suffered a compensable injury" to all of the portions of the Workmen's Compensation Act where the terms "time of accident," "time of injury," "date of disability," "date of accidental injury," or words of similar import, are used, recognizing that in doing so we acknowledge the reality of possible latent injuries and that payment of compensation is a partial substitute for wages formerly earned by the workman at the time when he can no longer earn the same wage. What a travesty it would be a award a percentage of a lower wage earned by the injured employee if he had received wage increases between the date of the accident and the date he was no longer able to work. In times of inflation, such as the present, he might well be relegated to the State's welfare system to meet the ever-increasing monetary demands for maintaining a standard of decency, dignity and self-respect (1 Larson's Compensation Law 6, § 2.20), if his increased wage-earning ability between accident and disablement were not recognized. We do not believe the Legislature so intended, and its enactments thus are read to give the most beneficial interpretation to them favorable to the workman.

The formula, then, to determine the amount of compensation to be paid, is extracted from the provisions of §§ 52–1–20 and 52–1–41 and –42. Section 52–1–20 provides the applicable quotient or multiple by which a workman's monthly, daily or hourly wage shall be divided or multiplied to obtain his average weekly wage; § 52–1–41 establishes the maximum and minimum amounts that may be paid for total disability, regardless of the workman's average weekly wage, and requires a graduated increase until July 1, 1978 when one hundred percent of the average weekly wage in the State became the maximum allowed; and § 52–1–42 makes the amount of total disability, multiplied by the percentage of disability, the amount to be recovered for the court-determined degree of partial disability. A hypothetical illustration may be helpful:

1. W earned $1,260.00 a month at the time he suffered a total and permanent compensable injury and disability, on August 1, 1977. Section 52–1–20 B(1) requires that the monthly wage be multiplied by 12 and then divided by 52.

$1,260 x 12 = $15,120

$$\frac{\$15,120}{52} = \$290.769 \ (\$290.77) = \text{W's average weekly wage.}$$

2. Assume that the average weekly wage in the state on July 1, 1977 was $210.50. Section 52–1–41 provides that, for total disability, the workman shall receive a maximum of 89% of the average weekly wage, or:

$210.50 x 89% = $187.345 ($187.35)

3. Section 52–1–41 further provides that a totally injured workman shall receive, during the period of his disability, two-thirds of his average weekly wage.

$$\frac{2}{3} \ x \ \$290.77 = \$193.844$$

4. Since two-thirds of W's average weekly wage is greater than 89% of the hypothetical average weekly wage in the state, W may not be awarded more than $187.35 from Au-

gust 1, 1977 through June 30, 1978. However, on July 1, 1978, according to the provisions of § 52–1–41 A, he shall become entitled to 100% of the average weekly wage in the state, or $210.50, since that amount is still less than W's actual average weekly wage. And if the *July 1, 1978* average weekly wage in the state is more that $2.00 greater that $210.50 (the average weekly wage on July 1, 1977), W shall then receive 100% of the greater amount (so long as it is not more than $290.77) from July 1, 1978 forward. § 52–1–42 D, N.M.S.A. 1978.

Thus, a workman's disability compensation award may increase over a 600-week period from a maximum of $90 per week in July 1975, through 100% of the average weekly wage in the state on and after July 1, 1978, but it may never exceed two-thirds of the actual average weekly amount the workman was earning at the time his disability commenced. No doubt the Legislature, cognizant of the Report of the National Commission of State Workmen's Compensation Laws published in July 1972 (*see* "Insurance Study Committee Report to the Thirty-second Legislature"), sought to alleviate the impossibility of stretching a rigidly fixed income to the permanently disabled workman during those years following disability when he would be faced with an erosion in the value of his benefits, and enacted the escalating increase of benefits in its 1975 amendment to § 52–1–42 [then § 59–10–18.3, N.M.S.A.1953].

With respect to the instant case, the parties stipulated plaintiff was earning $275.40 per week both at the time of the accident in 1976 and when he became unable to work in 1977. Two-thirds of $275.40 is $182.60. They also stipulated that if compensation were to be determined as of the 1976 date, the rate to be paid would be $114.61; if the 1977 date applied, $142.59. Those figures accurately represent the maximum entitlements as computed in accordance with § 52–1–41(B), N.M.S.A.1978.

Applying, then, the rule that the date of a workman's accident, injury, and benefits are to be determined by and as of the "date when the injury manifests itself" or "when the workman knows or should know he has suffered a compensable injury," we are satisfied that the trial court properly awarded the higher rate of compensation to Mr. Casias. Moreover, since the average weekly wage in the state increased by more than $2.00 on July 1, 1978, to $172.46, then Mr. Casias became entitled to the entire 100% of that average weekly wage in the state. He is so limited because he is only entitled to two-thirds of his own average weekly wage ($182.60) *or* the maximum percentage of the average weekly wage in the state ($172.46), whichever is less.

*Gilliland v. Hanging Tree*, 92 N.M. 23, 582 P.2d 400 (Ct.App.1978), and *Ideal Basic Industries, Inc., v. Evans*, 91 N.M. 460, 575 P.2d 1345 (1978), urged by appellants, have no factual similarity to this case, since each of those claimants suffered simultaneous accident, injury and death or disablement. To have awarded compensation benefits computed as of the dates of the respective accidents in *Gilliland* and *Ideal* does not present a conflict with what we have said here.

One final matter is appellee's request for attorneys fees for their services on appeal. As we have noted, the matter was submitted to the trial court upon stipulation. The record does not indicate extraordinary services below by counsel for appellee, but does disclose an award of substantial fees by the trial court. Appellee is awarded $1,000 in attorney's fees for his counsel's services on appeal. *Gearhart v. Eidson*, 92 N.M. 763, 595 P.2d 401 (1979); *Herndon v. Albuquerque Public Schools*, 92 N.M. 287, 587 P.2d 434 (1978); *Ortega v. New Mexico State Highway Dept.*, 77 N.M. 185, 420 P.2d 771 (1966).

Judgment is affirmed.

IT IS SO ORDERED.

HENDLEY and SUTIN, JJ., concurring in result.

HENDLEY, Judge (concurring in result).

I concur in the result of Judge Walters' opinion and particularly, under the facts here, in the holding that the date the average weekly wage is computed is the "date when the compensable injury manifests itself."

I agree that the attorney fees on appeal should be $1,000.

SUTIN, Judge (concurring in result).

I concur in the result.

The Legislature enacted the Workmen's Compensation Act a half century ago. By additions, amendments, and rewriting of its provisions, the Legislature has created a monster that often defies the wisdom of Solomon and the dexterity of Houdini. I write harshly to alert the Legislature to the need of a Workmen's Compensation Act based upon common sense and clear language that meets the challenge of today; provided, of course, the Supreme Court does not deny publication of this opinion.

The interplay of the words "accident," "injury," "accidental injury," "disability," "total and partial disability," on a crossword puzzle would please the lawyers and the judiciary. But to use the interplay in the determination of workmen's compensation benefits does not conform to the normal wisdom of the Legislature. We have resolved these puzzling problems by judicial interpretation. Nevertheless, there has been constant disagreement of what we believed to be fair and equitable in each case.

Let us turn to the present case.

The date of plaintiff's accident was *October 2, 1976.* Effective July 1, 1976, the rate of compensation to be paid the workman was 78% of the average weekly wage fixed by the Employment Security Commission. The Commission fixed the amount of compensation, effective at the time of the accident, at *$114.61* per week as the average weekly wage.

The date of disability was *August 28, 1977.* Effective July 1, 1977, the rate of compensation to be paid the workman increased to 89% of the average weekly wage to be fixed by the Employment Security Commission. The Commission fixed the amount of compensation, effective at the time of disability, at *$142.59* per week as the average weekly wage. See § 52–1–41, N.M.S.A.1978, enacted Laws 1975, ch. 284, § 8. Subsection B says:

> [T]he average weekly wage in the state shall be determined by the employment security commission * * *.

Section 52–1–20, enacted in 1965, is entitled "Determination of average weekly wage." It provides a formula by which the court shall determine the average weekly wage. The average weekly wage was computed by the remuneration the workman was receiving "at the time of the accident." To me, this long and complicated section was impliedly repealed by § 52–1–41(B) enacted years later.

The question for decision is:

> At what rate does an employer begin to pay the workman his average weekly wage, the rate in effect at the time of the accident or the time of disability?

Let us note some of the statutory provisions.

Section 52–1–40 entitled "Waiting period" reads:

> No compensation benefits shall be allowed * * * for any *accidental injury* which does not result in the workman's death, or in a *disability* which lasts for more than seven days; provided, however, *if the period of the workman's disability lasts for more than four weeks from the date of his accidental injury, compensation benefits shall be allowed from the date of disability.* [Emphasis added.]

Section 52–1–41(C) reads:

> The average weekly wage in the state, determined as provided in Subsection B of this section, *shall be applicable for the full period during which compensation is payable,* when the date of the occurrence of an *accidental injury* falls within the calendar year commencing January 1 following the June 30 determination. [Emphasis added.]

Section 52–1–48 reads:

The benefits that a workman shall receive during the entire period of *disability,* and the benefits for death, shall be based on, and limited to, the benefits in effect on the date of *the accidental injury* resulting in the *disability* or death. [Emphasis added.]

Section 52–1–41(A) begins:

For total disability the workman shall receive, *during the period of that disability* [a rate of compensation] * * *. [Emphasis added.]

Section 52–1–42, on partial disability, uses the same language.

We note that the language used, as related to compensation benefits, speaks in terms of "disability," not "accident."

Section 52–1–41 was in effect both at the date of the accident and at the date of disability. There was one accident and one disability. I choose to hold that the employer shall begin to pay the workman his average weekly rate from the date of disability because a workman is not entitled to compensation for the mere happening of an accident.

My opinion in *De La Torre v. Kennecott Copper Corporation,* 89 N.M. 683, 556 P.2d 839 (Ct.App.1976) must not be misinterpreted. In *De La Torre,* the first accident which occurred in 1967 was governed by a statute of limitations that did *not* toll the limitation period. Thereafter, plaintiff completely recovered. At the time of the second accident which occurred in 1974, the amended limitation statute of 1967 which *did* toll the limitation period, was in effect. Because public policy demanded it, we held that the one year period of limitation was tolled and plaintiff's complaint was filed in time. I said:

* * * The 1967 statute applies because the date of disability is critical and the law effective at the time controls. [89 N.M. at 686, 556 P.2d at 842.]

In *Moorhead v. Gray Ranch Co.,* 90 N.M. 220, 224, 561 P.2d 493 (Ct.App.1977), we said:

* * * Therefore, *De La Torre* is authority for the proposition that *the rate of compensation should be based upon the applicable law on the date of disability.* In this case, total disability commenced in January of 1975 and the rate of compensation should be based upon the statutory rate in effect at that time. [Emphasis added.]

*De La Torre* was not authority for the proposition stated. *De La Torre* involved two separate accidents, disabilities, and two separate statutes. In the instant case, we are involved with one accident, one disability, and one statute that covers the date of the accident and the date of disability. However, I do agree in principle, the rule in *De La Torre,* that the law effective at the time of disability controls and should be applied to the instant case.

In *Herndon,* cited in Judge Walters' opinion, I said:

* * * [Plaintiff] suffered total disability as of September 2, 1975 and is entitled to disability benefits as of that date. [Not June 4, 1975.]

In *Lamont v. New Mexico Military Institute,* 92 N.M. 804, 595 P.2d 774 (1978), this Court, without reference to § 52–1–41 then in effect, decided that the amount fixed as the rate of compensation on January 21, 1977, the date of disability, was correct.

Based upon the foregoing discussion, I concur with Judge Walters' opinion. However, in my opinion, plaintiff should be awarded an attorney fee of $2,500 for services rendered in this appeal.