**DiSABATINO & SONS, INC., Employer Below, Appellant,**

v.

**Albert FACCIOLO, Employee Below, Appellee.**

Supreme Court of Delaware.

Argued March 10, 1975.

Decided April 28, 1975.

Rehearing Denied May 19, 1975.

Howard M. Berg, of Berg, Komissaroff & Sawyer, Wilmington, for employer below, appellant.

Alfred M. Isaacs of Flanzer & Isaacs, Wilmington, for employee below, appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

McNEILLY, Justice:

This workmen's compensation case was remanded to the Industrial Accident Board by a prior opinion of this Court (see DiSabatino & Sons v. Facciolo, Del.Supr., 306 A.2d 716 (1973) to resolve the issue of whether a condition complained of was a "recurrence" of a prior compensable injury or was a new injury. The Board determined that it was a "recurrence" as defined in this Court's prior opinion. This determination was appealed to the Superior Court, was affirmed, and now is on appeal to this Court.

## I

The facts, the issues and the applicable law are succinctly stated in the prior opinion of this Court. The need no further enlargement.

## II

In its finding of fact and conclusions the Board stated in part:

"1. Although running from the cave-in [of a manhole, while on the job, on December 9, 1969] constituted "unusual exertion" . . ., said unusual exertion did not aggravate the claimant's injury which he sustained on December 2, 1968.

2. No new accident or episode occurred on December 9, 1969 which caused, even, in part, the claimant's subsequent disability. * * * . . . we found no aggravation of a pre-existing condition because of said unusual exertion. * * *

3. In December, 1969, the claimant suffered a disabling recurrence of his December, 1968 injury. We use the term 'recurrence' to mean a return of a physical disability or impairment without the intervention of a new or independent accident. DiSabatino & Sons, Inc. v. Facciolo, Supra. As was stated in our February 17, 1971 decision:

"(T)he only medical expert, Dr. LeRoy, stated that the claimant already had the same permanent partial disability and work restrictions resulting from the first accident, well before the second accident. The subsequent events suffered by the claimant did not change the doctor's opinion on permanent partial disability or on the claimant's work restrictions. The doctor also stated that scar tissue from the first operation could have caused the claimant to give up working on December 19, 1969. The claimant suffered no external trauma in escaping the cave-in and no immediate pain there-

after. (He was not hit by any falling debris nor had he slipped, fallen or struck any object in attempting to escape the cave-in). The Board believes that the scar tissue formations in the claimant's back were the result of the first operation. In addition, the doctor stated that the claimant did not give any history to him on the first visit December 29, 1969 which related to the cave-ins; this is consistent with Royal Globe's Exhibit #1 where the claimant stated that he could not understand the increase in leg pain on or about December 16, 1969 and then finally he recalled having jumped from a manhole cave-in December 9, 1969. Even the claimant minimized his escape activities as the cause of the pain."

In our February 17, 1971 decision, we also pointed out the fact that the claimant suffered minor pains in his right leg in the middle of November, 1969, approximately one month before the cave-in incident, and this fact was also weighed by the Board in favor of a recurrence".

### III

■ The scope of review of factual findings of the Industrial Accident Board is to determine only whether or not there was substantial evidence sufficient to support the findings of the Board. Avon Products v. Lamparski, Del.Supr., 293 A.2d 559 (1972).

The only medical testimony before the Board was that of Dr. Pierre LeRoy, a neurosurgeon. The nature of his testimony is exemplified by the following:

"Q. Is Mr. Facciolo still recuperating from his accident of December 9, 1969? A. I would say that Mr. Facciolo has symptoms referable to his back and leg. And to define the incident, for example, of what I will call the second incident of the 9th of December, 1969, was very difficult from a medical or a neurologic standpoint.

BY MR. FLANZER:

Q. Repeat that again, Doctor, I am afraid I missed it.

A. That it is very difficult from a medical or neurological or neurosurgical standpoint to separate the basic causal mechanism of the symptoms that recurred, after the incident of the ninth of December, 1969. In other words, and I think this is the crux of this as far as I am concerned, it's my understanding that from a—as a specialist in back conditions that I cannot say whether this is a recurrence of original symptoms going back to the initial accident that I will refer to as accident number one on the 2nd of December, 1968, and that a new disk perhaps has been ruptured, or whether this is a new illness, namely lumbosacral strain, which might have reference to the incident of the 9th of December, 1969. Anatomically, in other words, I cannot clinically separate this without going through a myelogram and even then I am not certain that we have under our current medical knowledge the ability to separate complex causal, the complex solution. I am not making myself clear. I cannot separate all the mechanisms of the back pain of the 9th of December, 1969. Whether it is due to a pre-existing injury that was aggravated, or whether it is, in fact, a new incident.

My tendency is to think that it is probably due to a new incident, a reflex mechanism of trying to get out in a hurry, twisting suddenly and moving in a rapid way, is consistent with the history of a recurrence of a lumbosacral strain mechanism".

The sum and substance of the physician's testimony was too vague and uncertain to meet the classification of "substantial evidence" sufficient to support a finding either of "recurrence" or of a new

work-connected accident. See M. A. Hartnett, Inc. v. Coleman, Del.Supr., 226 A.2d 910 (1967).

 However, as stated in the Board's findings, there were other factors considered, i. e., scar tissue from the first operation, no external trauma arising from the incident of December 9, 1969, failure of the claimant to give the physician a history of the December 9, 1969 incident, leg pains in November, 1969, and the fact that the claimant minimized the escape incident as cause of pain. These facts were sufficient to supply the Board with the additional evidence necessary to support the Board's finding of "recurrence" by "substantial evidence".

Affirmed.