597 P.2d 1178 (1978)
93 N.M. 9
Santiago S. MAREZ, Plaintiff-Appellee,
v.
KERR-McGEE NUCLEAR CORPORATION, Defendant-Appellant.
No. 3487.
Court of Appeals of New Mexico.
December 19, 1978.
Melvin L. Robins, Albuquerque, for appellee.
Lowell E. McKim and George W. Kozeliski, Glascock, McKim & Head, Gallup, for appellant.
For majority opinion, see 595 P.2d 1204.
SUTIN, Judge (specially concurring).
I specially concur.
The purpose of this concurrence is to set the guidelines for proving total or partial disability of a workman. Seldom does a workmen's compensation case appealed to this Court reflect a clear establishment of these results.
Section 52-1-24, N.M.S.A. 1978 reads:
As used in the Workmen's Compensation Act, "total disability" means a condition whereby a workman, by reason of an injury arising out of, and in the course of, his employment, is wholly unable to perform the usual tasks in the work he was performing at the time of his injury, and is wholly unable to perform any work for which he is fitted by age, education, training, general physical and mental capacity and previous work experience. [Emphasis added.]
Section 52-1-24 defines "partial disability" in identical language, except for the substitution of "some percentage-extent" for the word "wholly."
It is imperative that the "age, education, training, general physical and mental capacity and previous work experience" of a workman be proven. This proof encompasses a life history. Each fact must be delineated by competent evidence. This information must be established by a workman and made available to a medical expert and to an expert vocational analyst when both experts appear to testify. Expert witnesses should be requested to obtain the life history from the workman. The vocational analyst obtains this information in the ordinary course of his study of the problem, but generally lacks competence to express an opinion on the medical aspects of "general physical and mental capacity." The medical expert seldom obtains a life history of each factor involved. I am not satisfied with a disability rating by a medical expert. A workman may be 40% disabled medically, but totally disabled when coupled with the workman's education and experience. See, Mabe v. North Carolina Granite Corporation, 15 N.C. App. 253, 189 S.E.2d 804 (1972).
After the various factors have been proven, the workman and the experts should be asked:
In your opinion, based upon (your) (the) age, education, training, general physical and mental capacity and previous work experience (are you) (is the workman) wholly unable to perform the usual tasks in the work (you) (he) was performing at the time of (your) (his) injury?
In your opinion, based on those facts, (are you) (is the workman) wholly unable to now perform any work for which (you) (he) is fitted? [Emphasis added.]
The same questions can be asked on partial disability, and the percent of partial disability. To be totally or partially disabled both prongs must be answered affirmatively.
The life history of plaintiff follows:
At the time of trial, December 30, 1977, plaintiff was 32 years of age, with a wife and four children, living in a mobilehome *1179 and unemployed. In 1964, at the age of 18 years, he was graduated from Grants High School, Grants, New Mexico. While in high school, he worked as a shoeshine boy in a barber shop. After graduation, he was employed in the molding plant of Mount Taylor Mill Works at Milan, New Mexico. Thereafter, he was drafted into the United States Army and was discharged in 1968. He was then employed by United Nuclear as a "top-lander," one who drove an ore truck and delivered materials. In 1969, when the mine closed, plaintiff began his employment with Kerr McGee as a laborer, lifting heavy sacks of ammonium sulphate. A month and a half later, he was promoted to second class operator in the boiler room of the acid plant. This consisted of opening and closing valves, taking samples of water, treating the water with different chemicals and lifting materials for use in water.
Plaintiff was promoted to first class in the acid plant, and in 1971, while opening a valve in the boiler room, he was injured. He jerked to keep from burning his face and twisted his back, the forerunner of his future disability. He told his boss, continued working and saw a doctor or two.
In 1975, he was transferred from the acid plant to the rubber plant. This consisted of heavy lifting, climbing in and out of leech tanks, applying rubber to pipes, lifting pipes and pump bowls and vulcanizing them. It required bending, lifting and squatting. In June and July of 1975, the annual "turn-around" of the plant took place. The mill was shut down and all necessary repairs were to be made. While repairing a conveyor belt, plaintiff and another laborer lifted a 400 pound portable vulcanizer and plaintiff's back injury was aggravated, resulting in much pain and limping. On returning from a trip to California, plaintiff was attended by a chiropractor for 10 days without relief. He returned to work for three days but had to quit. He was again attended by the chiropractor and Dr. Allan Wilson in Albuquerque who suggested surgery. In August 1975, a laminectomy was performed.
In March 1976, seven months later, plaintiff returned to work. In April, his back pain returned. After notifying his employer he was sent to the company's doctor and was off work until May 2, 1976. The company doctor referred plaintiff to an Albuquerque doctor who suggested further surgery to perform a fusion atop the laminectomy. The company doctor did not recommend it. Plaintiff sought to do lighter work along with his pain and disability but nothing was available. He continued to work until June 16, 1977, but he was compelled to quit because he could not perform his duties.
At the time of trial, plaintiff had pain "like the stretching or pulling of the nerve." He attended the New Mexico State Branch College in Grants, New Mexico for one semester under the G.I. Bill and studied mathematics, speech, psychology and english. Since June of 1977 he was unable to work at all. Thereafter, under Dr. Wilson's recommendation, he lay down and lifted his leg toward his chest, two or three times a day for about two hours every day, to relieve the pain in his back.
An injured employee is "totally disabled" if he is unable to pursue any gainful employment without experiencing substantial pain. Rachal v. Highlands Ins. Co., 355 So.2d 1355 (La. App. 1978).
The foregoing evidence of plaintiff's age, education, training, general physical and mental capacity and previous work experience constituted sufficient evidence for the trial court to find that plaintiff was totally disabled at the time of the injury and at the time of trial.
To rebut plaintiff's total disability, defendant produced as a witness, Abraham Mackler, a vocational analyst, a well qualified expert to determine vocational disability. See, Getz v. Equitable Life Assur. Soc. of U.S., 90 N.M. 195, 561 P.2d 468 (1977), an action on an insurance policy, in which Mackler testified.
Mackler spent two days interviewing plaintiff and secured information of the *1180 age, education, training, general physical and mental capacity and previous work experience. However, he admitted he was not qualified to judge plaintiff from a medical point of view. He was asked a hypothetical question to render an opinion as to what kind of job plaintiff could do. He testified to a list of twenty-six. One pertinent question was asked:
Q. In any event based upon this listing of jobs that you gave, there's twenty-six of them, most of these he could do immediately, is that correct?
A. He could do it right now based on your hypothetical.
This question and answer did not comply with § 52-1-25 that defines partial disability. It did not establish a percentage-extent of disability at the time of trial, and it did not establish a "percentage-extent to perform the usual tasks in the work he was performing at the time of his injury." This is the two prong test, both of which are essential to recovery of workmen's compensation benefits. Medina v. Zia Company, 88 N.M. 615, 544 P.2d 1180 (Ct.App. 1975); Medina v. Wicked Wick Candle Co., 91 N.M. 522, 577 P.2d 420 (Ct.App. 1977). Furthermore, Mackler's opinion did not include plaintiff's nerve-racking pain as a disabling factor in the performance of work, nor that such work was actually available.
Defendants usually rely on my Medina opinions. Before doing so, they must discern the facts in each case. In Zia Company, the employer offered plaintiff work that he was fitted to do, wholly able to perform, and at the same wage, but plaintiff left his work, went home and did not return. In Wicked Wick Candle, at the time of trial, plaintiff had full-time employment as a clerk typist. Neither case discussed a workman's ability to perform outside work, sedentary or otherwise. To attempt to make the two prong test applicable here on partial disability is an attempt to pole vault without a pole.
I should like to state my interpretation of the following language in the definition of disability.
... and is wholly unable to perform any work for which he is fitted ...
A misconception exists on the meaning of this phrase. Lawyers believe that read strictly as stated, an injured workman employed as an electrical engineer, plant foreman supervisor, department head or second class operator in a boiler room of an acid plant is not totally disabled if he has the capacity to perform ANY WORK. These words are given the broadest meaning, such as performing janitorial services, working as a filling station attendant, driving a truck on smooth highways, raking leaves for the city, selling pencils, and 25 other sedentary jobs. Affirmative answers by expert witnesses to questions put to them is considered to be sufficient to establish partial disability. This testimony is insufficient. These tasks are far removed from the workman's usual tasks, his physical and mental capacities, the risks involved and the unavailability of employment. They are not jobs "for which he is fitted."
The phrase "any work for which he is fitted" must be reasonably interpreted and liberally construed. Otherwise a man must be a helpless invalid or physical or mental basket case to be entitled to benefits. Total disability does not mean that a workman must be a helpless invalid. E.R. Moore Co. v. Industrial Com'n, 71 Ill.2d 353, 17 Ill.Dec. 207, 376 N.E.2d 206 (1978); Wilson v. Weyerhaeuser Co., 30 Or. App. 403, 567 P.2d 567 (1977). "Any work" means a workman's ordinary employment, or such other employment, if any, approximating the same livelihood the workman might be expected to follow in view of his circumstances and capabilities. An injured workman is totally disabled if he cannot perform the same or similar work to that performed before the accident without unusual difficulty or danger. A skilled worker, although he may be able to obtain other types of skilled work, is totally disabled if he cannot perform a substantial portion of the work incident to his special occupation. By reason of the work-caused *1181 disability, the employee is placed at a disadvantage in securing employment in the labor market. Thomas v. Holland, 345 So.2d 1000 (La. App. 1977). See, Thompson v. Argonaut Ins. Co., 28 Or. App. 697, 560 P.2d 684 (1977). Select Ins. Co. v. Boucher, 551 S.W.2d 67, 76 (Tex.Civ.App. 1977) says:
The term "total incapacity" does not imply an absolute disability to perform any kind of labor. A person disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment is considered totally disabled. The term implies disability to perform the usual tasks of a workman and not merely the usual tasks of any particular trade or occupation... .
To conclude that an electrical engineer is partially disabled because he is capable of raking leaves or performing janitorial services destroys the spirit of the Workmen's Compensation Act. He has no other skills or training to draw upon. Each case must be considered on its peculiar facts for the reasons that what may be totally disabling to one workman would be only slightly disabling to another of a different age, background and experience. A workman 60 years of age with a fifth grade education doing hard labor may be totally disabled, whereas a young man with a football career may not be.
A total disability award must not be an inducement to malingering. A workman should have the burden of proving that reasonable efforts were made to obtain work within work capabilities and failed to obtain work; that similar work was unavailable. A workman should search for employment and mention the different places where application was made to determine whether employers would undertake the risks of a disabled workman. To answer one newspaper advertisement and apply directly to one employer is not sufficient, Oliver v. Wyandotte Ind. Corporation, 360 A.2d 144 (Me. 1976), but where applications for work are made with fourteen employers, of course, the efforts made were sufficient. Bowen v. Maplewood Packing Co., 366 A.2d 1116 (Me. 1976).
The employer also has a duty to prove not only what the jobs might be, but more importantly, that such jobs be comparable or similar to the workman's skills and training and that these jobs were reasonably available to a person in the workman's position. This burden requires the employer to search for comparable available employment and assist the workman in obtaining work to support his family. "It is much easier for the defendant to prove the employability of the plaintiff for a particular job than for plaintiff to try to prove the universal negative of not being employable at any work." Brown v. Safeway Stores, Inc., 82 N.M. 424, 427, 483 P.2d 305, 308 (Ct.App. 1970). To justify this burden, the employer can, as this employer does, engage a private investigator to put the injured workman under surveillance. If a workman dawdles, the employer can test total disability every six months.
"Wholly unable to perform any work for which he is fitted" means:
1. unable to perform comparable or similar work to that which he performed before the accident occurred;
2. suitable to his skills, experience and training as a workman during his lifetime career;
3. for which employment is not presently or readily available in a stable labor market.
In the instant case, plaintiff was totally disabled.
The secondary purpose of this concurrence is to determine the reasonableness of an attorney's fee awarded a workman. Section 52-1-54(D), N.M.S.A. 1978, provides that "the compensation to be paid the attorney for the claimant shall be fixed by the court trying the same ... in such amount as the court may deem reasonable and proper ... provided, however, that the trial court in determining and fixing *1182 a reasonable fee must take into consideration ... (2) the present value of the award made in the workman's favor." [Emphasis added.]
A contingency fee award is not acceptable as a standard for fixing the reasonable attorney fee. Trujillo v. Tanuz, 85 N.M. 35, 508 P.2d 1332 (Ct.App. 1973); Baghramain v. MFA Mutual Insurance Company, 315 So.2d 849 (La. App. 1975); Salmon v. Salmon, 395 S.W.2d 29 (Tex. 1965).
The amount of recovery, being the present value of the award, is only a factor to be considered in determining the amount of the fee to be allowed the claimant's attorney. Trujillo, supra; Seal v. Blackburn Tank Truck Service, 64 N.M. 282, 327 P.2d 797 (1958).
In workmen's compensation cases, Elsea v. Broome Furniture Co., 47 N.M. 356, 376, 143 P.2d 572, 584 (1943) says:
... Many considerations enter into the matter of fixing attorney fees, not the least important of which are: the ability, standing, skill and experience of the attorney; the nature and character of the controversy; the amount involved, the importance of the litigation and the benefits derived therefrom. [See Williams v. Dockwiller, 19 N.M. 623, 145 P. 475 (1914).] We observed also in the case last cited that the trial court which fixes the fee supposedly has a superior knowledge of the actual services rendered and the charges usually prevailing in the particular locality for such services... .
Elsea was adopted as the rule in Michelson v. Michelson, 89 N.M. 282, 551 P.2d 638 (1976), a divorce case in which an award of an attorney fee of $26,000.00 was upheld where the wife's attorney submitted a time card showing approximately 400 hours spent in preparation for trial and where the trial consumed two full days.
Elsea and Michelson stand for the proposition that "The reasons which would call for a disturbance of the amount so fixed by a trial court must be very persuasive." [47 N.M. at 376, 143 P.2d at 584.]
Neither the Workmen's Compensation Act nor judicial rule requires proof by expert witnesses or documentary evidence to establish the reasonableness of an attorney fee. "The award is for an amount the trial court deems `reasonable and proper.'" Salazar v. Kaiser Steel Corporation, 95 N.M. 254, 259, 511 P.2d 580, 585 (Ct.App. 1973). The amount deemed "reasonable and proper" varies from district judge to district judge. A review of New Mexico cases discloses vast variations. 5B West's New Mexico Digest, Workmen's Compensation, Section 1983 (1966) and 1978 Supplement.
To me, a reasonable attorney fee should not depend upon the idiosyncratic attitudes of a district judge or an appellate court. It should be based upon the considerations set forth in Elsea, supra. We do not disturb the amount awarded unless the amount is so large that it is shocking; that the district judge acted beyond the bounds of reason. Compared with the inadequate awards heretofore given, the amount awarded in the instant case appears to be atop a mountain. To me, it was reasonable.
HERNANDEZ, Judge (dissenting).
I respectfully dissent.
There is substantial evidence in the record that the plaintiff is wholly unable to perform the usual tasks in the work he was performing at the time of his injury. However, the evidence presented by the plaintiff that he is wholly unable to perform any work for which he is fitted by age, education, training, general physical and mental capacity, and previous work experience, is unsubstantial. The record shows that the plaintiff was 32 years old, of average to above average intelligence, highly motivated and hard working. He was a high school graduate who had some additional training in the army as an automobile mechanic. At the time of trial he was taking courses in English, mathematics and psychology at the *1183 branch college of New Mexico State University at Grants. Dr. Wilson, one of the doctors who had operated on him in 1975 and had continued to treat him, testified that the plaintiff could do sedentary work but that he could not give a percentage figure as to the degree of plaintiff's disability, however, "I would guesstimate that it would probably be somewhere in the area of forty percent at this point." The plaintiff testified that he did not know what he could do. The plaintiff failed to carry the burden of proof as to this element.
Defendant's fourth point of error is well taken. Any claim that the plaintiff might have arising out of the accident in 1971 is barred by the limitation period. See Section 59-10-13.6 of the act. The trial court should have ruled that the claim was barred as a matter of law and dismissed it.
Defendant's fifth point of error is also well taken. Considering the issues, the proceedings, etc., it is my opinion that the trial court abused its discretion in awarding attorney's fees on a percentage basis and in the amount that it did.