610 P.2d 212

Paul PEREA, Jr., Plaintiff-Appellee,

v.

Al GORBY, d/b/a Jack Wayte Construction Company and American Insurance Company, Defendants-Appellants.

No. 4352.

Court of Appeals of New Mexico.

March 27, 1980.

Deborah S. Davis, Shaffer, Butt, Thornton & Baehr, P.C., Albuquerque, for defendants-appellants.

Jack T. Whorton, Alamogordo, for plaintiff-appellee.

OPINION

SUTIN, Judge.

This is another workmen's compensation case in which the findings of the court are the determinative factor. The court made the following findings and conclusions:

## COURT'S AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. The plaintiff had full-time employment with the defendant, Al Gorby, d/b/a Jack Wayte Construction Company, and was working on the company's job site at Alamogordo, New Mexico on March 22, 1977. His hourly rate of pay was $3.00 an hour.

2. On March 22, 1977, he suffered a disabling compensable injury to his back during the course of his employment and arising out of his employment.

3. He is presently wholly unable to perform the usual tasks in the work that he was performing at the time of the injury and those tasks which he had performed prior to injury.

4. He is wholly unable to perform any work for which he is fitted by reason of his age, education, training, general physical and mental capacity and previous experience.

5. Paul Perea prior to his injury of March 22, 1977, based upon his age, education, training, general physical and mental capacity and previous work experience could engage in the business or profession of a worker at an ice plant, a cowboy, a welder's assistant, a construction worker, a truck driver, a logger, a log skinner, a heavy equipment operator, a heavy equipment inspector and maintenance man, an ice plant crew supervisor and a small cafe operator.

6. During portions of the six years prior to his injury on March 22, 1977, he worked at Oceanside Ice Plant in all aspects of the operation, except office work.

7. Paul Perea before May 4, 1978, was a good and knowledgeable employee for

Oceanside Ice Company, and was trusted by his employer, and needed by Oceanside Ice Company because he spoke both English and Spanish and could supervise men.

8. At the time of his injury on March 22, 1977, while working for defendants, plaintiff Paul Perea was earning $3.00 an hour on a forty hour work week.

9. *Defendant paid Paul Perea temporary total disability from March 22, 1977, through November 21, 1977, at the rate of $80.04 per week. Defendants paid reasonable and necessary medical bills on behalf of Paul Perea through November 22, 1977.*

10. Paul Perea had a semi lamonectomy in July, 1977, performed by Dr. William Nelson of El Paso, Texas.

11. Following his injury of March, 1977, and operation of July, 1977, Paul Perea engaged in the occupation of operating a cafe in Oro Grande, New Mexico for approximately three months, but because of the injuries suffered he could not continue in that occupation.

12. In March or April of 1978, Paul Perea went to work as a block supervisor at Oceanside Ice Company.

13. The block supervisory position of Paul Perea at Oceanside Ice Company was created especially for him, but was not charitable, and was a function which his employer needed performed regardless of Paul Perea's circumstances.

14. Paul Perea performed the assigned tasks at Oceanside Ice Company as block supervisor from March or April of 1978, until May 4, 1978.

15. *The job of block supervisor at Oceanside Ice Company did not entail heavy lifting or repeated bending.*

16. *Paul Perea's normal and usual tasks as block supervisor at Oceanside Ice Company in 1978 were walking or sitting, overlooking a crew, keeping an eye on machine gauge panels.*

17. Paul Perea was earning $600.00 a month in his job at Oceanside Ice Company in 1978.

18. *May 4, 1978, Paul Perea in the course of his employment as supervisor at Oceanside Ice Company bent over to show a crew member how to engage a pallet jack and when he straightened up he had intense pain in his back.*

19. Defendants deny the alleged disability in Paul Perea was a natural and direct result of the accident of March 22, 1977.

20. Oceanside Ice Company made an employer's report of the incident of May 4, 1978 while working at Oceanside Ice Company and sent Paul Perea to the company doctor who referred him on to an orthopedic surgeon. Paul Perea made a workmen's compensation claim in California for his injury of May 4, 1978, while working at Oceanside Ice Company.

21. At this time, he is unable to obtain and retain gainful employment.

22. His disability, as a reasonable medical probability, is the natural and direct result of the injury occurring on March 22, 1979 [sic].

23. *This disability began and has continued without interruption since March 22, 1977.*

24. Compensation was paid at $80.04 each week by the defendants to plaintiff from April 5, 1977 to November 21, 1977 and that it is agreed by the parties that these payments were made and were in the correct amount.

25. It was necessary for the plaintiff to employ counsel in the prosecution of his action and that reasonable attorney's fees (including taxes) are $4,000.00 and that the attorney advanced in behalf of the plaintiff the amount of $567.01 and that these fees and expenditures were reasonable in the necessary prosecution of the action.

## CONCLUSION OF LAW

1. The plaintiff is totally disabled as defined by Sec. 52–1–24, NMSA, 1978 Comp.

2. Paul Perea's compensation rate for total disability benefits is $80.04 per week.

3. Judgment should be entered by the plaintiff against the defendants for the payment of compensation for total disability as set forth in Sec. 52–1–41, NMSA, 1978 Comp., which the parties have agreed and the Court has found is in the amount of $80.04 a week from November 22, 1977.

4. Defendant should be ordered to pay all medical expenses and related benefits as set out in Sec. 52–1–49, NMSA, 1978 Comp.

5. The plaintiff should be awarded his reasonable attorney's fees in the amount of $4,567.01.

6. Judgment should be entered accordingly.

Based upon this decision, the court ordered plaintiff to have judgment against defendants in the amount of a lump sum for payments due and unpaid for total disability from November 21, 1977, when temporary total disability payments ceased, to May [sic] 11, 1979, the time of trial, and judgment for such continued payments thereafter. Defendants appeal from this judgment. We affirm.

Defendants challenged Finding No. 22 and Conclusion No. 3 only.

A. *Factual Findings 11, 12 and 14 do support Conclusion 3.*

Defendants' first point is that the following findings of fact do not support Conclusion of Law No. 3:

11. Following his injury of March, 1977, and operation of July, 1977, Paul Perea engaged in the occupation of operating a cafe in Oro Grande, New Mexico for approximately three months, but because of the injuries suffered he could not continue in that occupation.

12. In March or April of 1978, Paul Perea went to work as a block supervisor at Oceanside Ice Company.

\*    \*    \*    \*    \*    \*

14. Paul Perea performed the assigned tasks at Oceanside Ice Company as block supervisor from March or April 1978, until May 4, 1978.

Based upon these findings, defendants argue that judgment should not be entered against defendant for total disability. Defendants contend that "At best, Paul Perea is entitled to compensation for a partial disability for the period between November 22, 1977, and May 4, 1978." We disagree.

■ The unchallenged findings of fact established that at the time of trial plaintiff was totally disabled and unable to obtain and retain gainful employment, and under Finding No. 23, "This disability began and has continued without interruption since March 22, 1977." Under these findings, judgment must be entered for total disability.

■ Ordinarily, we would hold that plaintiff was partially disabled between "March or April, 1978, and May 4, 1978," a period of a month or two. *Medina v. Wicked Wick Candle Co.*, 91 N.M. 522, 577 P.2d 420 (Ct.App.1977). Even so, the difference in amount between payments of $80.04 per week for total disability for a month or two, and payments for partial disability to be awarded, would be trivial. A remand for this purpose would be unwarranted.

■ Plaintiff is also entitled to 6% interest on the amount of compensation due and owing on July 20, 1979, the date of judgment, to the date of payment. *Medina, supra.*

Conclusion of Law No. 3 is supported by the findings.

B. *Defendants admitted that plaintiff's disability was a natural and direct result of the March 22, 1977 accident.*

Defendants claim that "Plaintiff has not made any showing that as a medical probability his disability was a natural and direct result of his March 22, 1977, accident."

Section 52–1–28(B), N.M.S.A. 1978 reads in pertinent part:

In all cases where the defendants deny that an alleged disability is a natural and direct result of the accident, the workman must establish that causal connection as a medical probability by expert medical testimony. \*    \*    \*

It is established law that "This statute makes it encumbent upon the claimant to present one or more medical experts to testify that in his or their opinion there is a medical probability of causal connection between the accident alleged and the disability claimed." *Renfro v. San Juan Hospital, Inc.*, 75 N.M. 235, 238, 403 P.2d 681, 683 (1965). Where there is conflicting medical testimony, the trial court's determination of causal connection will be affirmed. *Torres v. Kennecott Copper Corporation*, 76 N.M. 623, 417 P.2d 435 (1966); *Yates v. Matthews*, 71 N.M. 451, 379 P.2d 441 (1963).

"From the time of the enactment of this section, due to poor performance in the courtroom, a chronic illness has overrun the decisions in New Mexico." *Trujillo v. Beaty Elec. Co., Inc.*, 91 N.M. 533, 540, 577 P.2d 431, 438 (Ct.App.1978), Sutin, J., specially concurring. All of the cases pro and con are cited in *Trujillo*.

We are not confronted with the statute or the judicial decisions. Defendants submitted the following finding of fact which the court adopted:

9. Defendant paid Paul Perea temporary total disability from March 22, 1977, through November 21, 1977, at the rate of $80.04 per week. Defendants paid reasonable and necessary medical bills on behalf of Paul Perea through November 22, 1977.

By this finding defendants admit they voluntarily paid plaintiff workmen's compensation benefits for 8 consecutive months for temporary total disability as a result of the March 22, 1977 accident. We said in *Armijo v. Co-Con Const. Co.*, 92 N.M. 295, 297, 587 P.2d 442, 444 (Ct.App.1978):

* * * The voluntary payment of maximum compensation benefits over a period of time does not establish total permanent disability; such payment is not an admission by the employer of the totality or permanency of any injury. The employer may at any time discontinue payments and the onus would then be on the employee to establish the permanency and totality of the injury * * *.

Voluntary payments are, however, an admission equivalent to an award of compensation benefits under § 52–1–28(A), and paid by defendants to plaintiff. One of the essential elements of this section is that plaintiff is entitled to workmen's compensation,

(3) when the disability is a natural and direct result of the accident.

By paying plaintiff workmen's compensation benefits, defendants admit that the disability was a natural and direct result of the accident. Defendants cannot deny this fact in its answer, admit this fact during trial, and then seek to avoid liability. Defendants relieved plaintiff of the burden of establishing any causal connection as a medical probability by expert medical testimony.

Defendants also appear to contend that there is no evidence that plaintiff's *present* total disability is, as a medical probability, causally connected to plaintiff's March 22, 1977 injury. Defendants seek to impose a second burden on plaintiff: (1) before suit is filed and (2) after the incident of pain suffered while employed by Oceanside Ice Company. The fallacy of this reasoning flows from the following facts:

(1) That disability continued without interruption from March 22, 1977 to judgment. This fact forecloses any additional burden on plaintiff to prove causal connection by expert medical testimony.

(2) The medical evidence is uncontradicted that the incident of bending in California caused intense pain as a result of the injury suffered on March 22, 1977.

(3) Questions of reasonable medical probabilities asked of and answered by the California doctor, although not as clear as one would desire, did rise above the realm of speculation.

We have stated innumerable times that the spirit of the Workmen's Compensation Act flows in the direction of the workman and toward his protection. The compensation carrier should not seek technical, circuitous routes to avoid its responsibilities.

We hold that defendants admitted plaintiff's disability as a natural and direct result of the March 22, 1977 injury.

C. *Plaintiff, as a matter of law must not seek relief from Oceanside Ice Company for the subsequent "aggravation" of his prior injury.*

Defendants seek to escape liability as a matter of law by imposing a duty on plaintiff to seek workmen's compensation benefits solely from Oceanside Ice Company because his preexistent injury was aggravated during his employment with this company.

Defendants rely on *Hanks v. Walker*, 60 N.M. 166, 288 P.2d 699 (1955) and *Ponce v. Hanes L'Eggs Products, Inc.*, 91 N.M. 112, 570 P.2d 943 (Ct.App.1977). These cases do deserve careful analysis and interpretation. For the occupational disease exposure rule, see *McCormick v. United Nuclear Corporation*, 87 N.M. 274, 532 P.2d 203 (Ct.App. 1974).

In *Hanks*, plaintiff was injured to the extent of 50% disability while employed by defendant. Defendant claimed error in the court's refusal to give two instructions to the jury: (1) that if plaintiff thereafter became disabled from another accident or from other causes, an interrogatory submitted should be answered in the negative. The Supreme Court found no substantial evidence "that, after the injury, plaintiff was 'disabled from another accident or from other causes.'" [Id. 60 N.M. 171, 288. P.2d 702]; (2) that if thereafter plaintiff's injury was aggravated by other circumstances and plaintiff became disabled, he was not entitled to recover. The Supreme Court found that this instruction should not be given because it was indefinite and uncertain in its use of "aggravation by other circumstances."

In the discussion of this second instruction, the Supreme Court quoted from the rules of Massachusetts and Florida. The Massachusetts rule was stated as follows:

"Where there have been several compensable injuries received by employee during the successive periods of coverage of different insurers, the subsequent incapacity must be compensated by the one which was the insurer at the time of the most recent injury that bore causal relation to the incapacity." [Id. 60 N.M. 173, 288 P.2d 703.]

The court said this rule was "doubtless correct" but not applicable. Under the Massachusetts rule, it has been held that an injury aggravated by work at the last place of employment, places liability on the last employer under a rule that the insurer covering the risk at the time of the most recent injury bearing a causal relation to disability must pay the entire compensation. *In re Pena's Case*, 5 Mass.App. 451, 363 N.E.2d 1333 (1977). This Massachusetts rule was erroneously accepted in New Mexico by *Ponce, supra.*

The Florida rule is a "recurrence of the injury" rule. It is also the rule in Massachusetts. *Rock's Case*, 323 Mass. 428, 82 N.E.2d 616 (1948). *Hanks, supra*, quoted the Florida rule extensively in which the original insurer was held liable. We excerpt the following:

"We think the evidence clearly shows that the incident which happened in November, 1943, was *not a recurrence of the injury* to his back which occurred on May 22, 1943, *but was the result of that injury from which he had never recovered*, and a manifestation of the continuance of that injury.

\*        \*        \*        \*        \*        \*

\* \* \* He demonstrated an exemplary spirit in making an honest effort to continue to earn a livelihood, regardless of his injury, for which we do not think he should be penalized." [Id. 60 N.M. 174, 288 P.2d 704.] [Emphasis added.]

*Rock's Case, supra*, explained the "non-recurrence of the injury" rule. It did not rely on the Massachusetts rule stated in *Hanks*. The rule was stated as follows:

\* \* \* There was evidence that the employee continually complained of his back ever since the injury of April 20, 1943. He often stopped work for weeks because of that injury. On the evidence it could have been found that the employ-

ee had not recovered from the injury of April 20, 1943, *that the lifting that he did on May 27, 1946, did not constitute an independent intervening cause for his subsequent incapacity, but that he would not have sustained any incapacity to labor on and after May 27, 1946, if he had not then been suffering from the effects of the injury he received on April 20, 1943.* * * * [Emphasis added.] [82 N.E.2d 618.]

*In re Audette's Case*, 5 Mass.App. 867, 367 N.E.2d 865 (1977) translated a doctor's statement of "aggravation" of her condition into a non-recurring injury. It did not rely on the Massachusetts rule quoted in *Hanks.*

*Rock's Case, supra*, was followed in the State of Maine. *Poole v. Statler Tissue Corp.*, 400 A.2d 1067 (Me.1979). Also relying on Larson's, *infra*, the court stated the rule as follows:

*If a disability of an employee is the direct result of a previously suffered injury and a second injury does not operate as a separate intervening contributing cause of the disability, the insurer at the time of the original injury remains liable for the employee's continuing disability.* * * * [Id. 1069.] [Emphasis added.]

The "harsh" Massachusetts rule, modified by *Rock's Case, supra*, and *Audette's Case, supra*, is not the "majority" rule. Unfortunately, *Ponce* quoted a portion of the Headnote from 4 Larson's § 95.00. This is an oversimplified "restatement" of "Rights Between Insurers" not accepted in the subsequent text.

4 Larson's Workmen's Compensation § 95.12, pp. 17–72 to 17–74 states the rule that has been widely accepted:

If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. *In this class would fall most of the cases discussed in the section on range of consequences in which a second injury occurred as the direct result of the first*, as when claimant falls because of crutches which his first injury requires him to use. *This group also includes the kind of case in which a man has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.* [Emphasis added.]

The instant case does not fall within the doctrine of the "harsh" Massachusetts rule. It falls within the "non-recurrence of the injury" rule stated in *Hanks* that the second injury was the result of the first injury from which the claimant never recovered. *Brewer v. Pan American Airways*, 156 Fla. 812, 24 So.2d 521 (1946); *Rock's Case, supra; Audette's Case, supra; Poole, supra; Calloway County Fiscal Court of Winchester*, 557 S.W.2d 216 (Ky.App.1977) (aggravation); *Burk's Inc. v. Blanchard*, 259 Ark. 76, 531 S.W.2d 465 (1976) (recurrent back trouble); *Gardner v. Underwriters Adjusting Company*, 27 Or.App. 433, 556 P.2d 710 (1976) (aggravated back problems); *Mullins v. Dura Corporation, Motor State Prod. Div.*, 46 Mich.App. 52, 207 N.W.2d 404 (1973); *Glaubitz v. Cooperative GLF Exchange, Inc.*, 39 A.D.2d 618, 331 N.Y.S.2d 152 (1972); *Travelers Insurance Company v. Olivares*, 467 S.W.2d 528 (Tex.Civ.App. 1971); *Allstate Insurance Company v. Dotson*, 135 Ga.App. 128, 217 S.E.2d 329 (1975) (aggravation not a new accident); *DiSabatino & Sons, Inc. v. Facciolo*, 338 A.2d 132 (Del.1975); *Meyer v. Signs*, 306 Minn. 55, 236 N.W.2d 774 (1975); *Leatherby Ins. Co. v. Hubbard*, 142 Ga.App. 476, 236 S.E.2d 168 (1977); *Owens v. Liberty Mutual Insurance Company*, 307 So.2d 313 (La.1975).

The facts in the instant case strongly support the commendation paid to a workman who demonstrates an exemplary spirit in making an honest effort to continue to earn a livelihood regardless of his injury. We have often said that "a workman should search for employment and mention the different places where application was made to determine whether employers would undertake the risks of a disabled workman." *Marez v. Kerr-McGee Nuclear*

*Corp.*, 93 N.M. 9, 595 P.2d 1204, 597 P.2d 1178, 1181 (Ct.App.1978), Sutin, J., specially concurring; *Aranda v. Mississippi Chemical Corp.*, 93 N.M. 412, 600 P.2d 1202 (Ct.App. 1979).

We hold that as a matter of law plaintiff was not required to seek relief from Ocean-side Ice Company for the subsequent "aggravation" of his injury and that the defendants are liable.

Plaintiff is awarded $2,000.00 in attorney fees for services rendered in this appeal and costs.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ, J., concurs in result.

LOPEZ, J., specially concurs.

LOPEZ, Judge (specially concurring).

I concur with the result reached by Judge Sutin in his opinion only.

I do not join in Judge Sutin's discussion or criticism of the *Ponce case*, 91 N.M. 112, 570 P.2d 943, because I do not think it is germane to the case at bar.