636 P.2d 291

Walter W. POWERS, Plaintiff-Appellee,

v.

RICCOBENE MASONRY CONSTRUCTION, INC., a New Mexico Corporation, United States Fidelity and Guaranty Company, and Rufus Gillory Masonry Company, a Sole Proprietorship, and Transamerica Insurance Company, Defendants-Appellants.

No. 4540.

Court of Appeals of New Mexico.

Dec. 2, 1980.

Rehearing Denied Dec. 15, 1980.

Certiorari Granted Feb. 17, 1981.

Certiorari Quashed May 11, 1981.

22

Michael Rosenberg, Michael G. Rosenberg & Associates, Albuquerque, Sarah M. Singleton, Pickard & Singleton, Santa Fe, for plaintiff-appellee.

Hal Simmons, Albuquerque, for defendants-appellants Riccobene and United States Fidelity & Guaranty Co.

J. E. Casados, Gallagher, Casados & Martin, Albuquerque, for defendants-appellants Rufus Gillory & Transamerica Ins. Co.

OPINION

LOPEZ, Judge.

This appeal involves the issue of which of two insurance carriers should pay compensation benefits to a disabled workman who suffered successive injuries while working for two different employers. The finding of the trial court that the workman is entitled to 100% disability is not contested by any party.

Claimant Powers is a bricklayer who, the trial court found, became disabled as the result of injuries incurred while working for two successive employers. The first accidental injury occurred on June 3, 1976, while Powers was working for Riccobene Masonry Construction (hereafter Riccobene). He stepped off a curb with a bag of mortar in his arms and experienced a severe back and leg pain which prevented him from working for two weeks. Riccobene's insurance carrier paid Powers workmen's compensation during this period. His injury was diagnosed by an orthopedic surgeon as acute lumbosacral muscular strain. Powers returned to work for Riccobene, and continued there until September 1977, except for an eleven week period during which he worked as a bricklayer somewhere else. In September 1977, he went to work as a bricklayer for Rufus Gillory Masonry (hereafter Gillory). After the 1976 injury, he continued to have intermittent back trouble and between June, 1976, and September 1978, he saw Dr. Moon, the orthopedic surgeon, three times. The diagnosis of lumbosacral strain remained the same. Powers took two weeks off work in October 1978, to rest his back. On January 29, 1979, he left work early because of intense back pain. The next day Dr. Moon found he had a herniated disc. Powers underwent surgery for this condition on February 14, 1979. He has not worked since January 29, 1979.

The trial court found that Powers suffered a first injury on June 3, 1976, while working for Riccobene, and a second injury,

which it characterized as an "operative accident" between August, 1978 and January 29, 1979, while working for Gillory. It found that both the injury incurred while working for Riccobene and that incurred while working for Gillory were proximate causes of Powers' disability, and apportioned the compensation payments between the insurance carriers of the two employers. The insurance companies appeal the apportionment. We find that, in the circumstances and posture of this case, the second insurance company should pay the entire amount.

Transamerica Insurance Company, Gillory's insurer, argues that (1) there was no second accidental injury arising out of and in the course of Powers' employment with Gillory; (2) even if there had been such an injury, Gillory had no notice of it within thirty days as required by statute; and (3) even if the notice were proper, United States Fidelity & Guaranty Company, Riccobene's insurer, should pay, because the second injury was the result of the first injury. For ease in description, we shall refer hereafter to the insurance companies by the name of the employer they represent.

*Second Injury*

■ The trial court found that:

Plaintiff's present disability was proximately caused by the aggravation of the June 3, 1976 accident by an operative accident that Plaintiff suffered between August, 1978 and January 29, 1979 while working for Defendant Gillory[.]

and Gillory challenges this finding. While an appellate court cannot make findings of its own, it can interpret those of the trial court to determine whether they are sufficient to support the judgment entered. *Herndon v. Albuquerque Public Schools*, 92 N.M. 635, 593 P.2d 470 (Ct.App.1978). We interpret the above finding to mean that while working for Gillory, Powers suffered a compensable injury as described in § 52–1–28, N.M.S.A. 1978 of the Workmen's Compensation Act, §§ 52–1–1 to 52–1–69, N.M.S.A. 1978, and that this injury contributed to some extent to Powers' disability.

Gillory asserts there is not sufficient evidence to establish that Powers suffered an injury while working for him because none of the experts who testified were able to pinpoint the time when the disc ruptured. While the evidence clearly supports the trial court's finding that the rupture occurred sometime between August, 1978, and January 29, 1979, during which period Powers was working only for Gillory, it is not clear that the rupture occurred while Powers was at work, and the trial court did not so find.

■ Since 1970, the law in New Mexico has been that an internal malfunction of the body caused by on-the-job activity is a compensable injury under the Workmen's Compensation Act. *Lyon v. Catron County Commissioners*, 81 N.M. 120, 464 P.2d 410 (Ct.App.1969), *cert. denied*, 81 N.M. 140, 464 P.2d 559 (1970). This court wrote:

[W]e take it that a malfunction of the body itself, such as a fracture of the disc or tearing a ligament or blood vessel, caused or accelerated by doing work required or expected in employment is an accidental injury within the meaning and intent of the compensation act.

*Id.* at 125, 464 P.2d at 415. In *Lyon*, the evidence indicated that the disc actually did rupture while the claimant was working. This need not be the case, however. It is not necessary that the evidence of a body malfunction or accidental injury develop while the claimant is working. In *Webb v. New Mexico Pub. Co.*, 47 N.M. 279, 141 P.2d 333 (1943), the New Mexico Supreme Court found that a workman who developed a rash on his hands from washing with a soap used frequently in the course of his employment was entitled to compensation benefits. No evidence was mentioned which would show that the rash actually appeared while the claimant was working.

■ It is not necessary for Powers to prove that the disc ruptured while he was working, as long as he is able to prove that his labor caused or accelerated the physical malfunction. In *Herndon*, this court found the date a claimant quit work due to the severity of her back pain was the date that

she suffered an accidental injury. Although in that case there was a specific accident at an earlier date when the claimant fell down a ramp with a cart of books, this incident was not crucial in our reasoning there. The woman had had a history of back trouble before the cart incident, and we reasoned that her daily job, which involved lifting and carrying books, was the cause of her eventual disability. We wrote:

> [I]f the stress of labor aggravates or accelerates the development of a pre-existing infirmity causing an internal breakdown of that part of the structure, a personal injury by accident does occur.

*Id.* at 640, 593 P.2d at 475. We interpret the trial court's finding in the instant case, in light of *Herndon*, to be that Powers suffered an accidental injury on January 29, 1979, while working for Gillory.

*Notice*

Section 52–1–29, N.M.S.A. 1978 of the Workmen's Compensation Act requires that the employer have either written or actual notice of the accident within thirty days of its occurrence. Gillory did not receive written notice of the January 29 accidental injury, but the trial court found that he had actual notice of it. Gillory asserts this finding is not supported by the evidence.

On appeal, the court reviewing a workmen's compensation case will consider the evidence, along with all reasonable inferences which may be drawn from it, in the light most favorable to support the findings of the trial court. *Moorhead v. Gray Ranch Co.*, 90 N.M. 220, 561 P.2d 493 (Ct.App.), *cert. denied,* 90 N.M. 254, 561 P.2d 1347 (1977). Only favorable evidence will be considered. *Marez v. Kerr-McGee Nuclear Corp.*, 93 N.M. 9, 595 P.2d 1204 (Ct.App.1978), *cert. denied*, 92 N.M. 532, 591 P.2d 286 (1979). The determination of whether the employer had actual knowledge is made from a consideration of the totality of the facts and circumstances. *Rohrer v. Eidal International*, 79 N.M. 711, 449 P.2d 81 (Ct.App.1968).

Gillory knew that Powers had hurt his back while working for Riccobene,

that his back still hurt, and that Powers' condition was gradually worsening. He knew that in October 1978 Powers took two weeks off to rest his back and to prepare himself for a big apartment job of Gillory's. On January 29, 1979, the day Powers left work, he was working on a kiva-like fireplace. Gillory knew that lifting and building kiva fireplaces was especially hard on Powers' back. On January 30, 1979, Powers told Gillory that he had to see a doctor about his back. Gillory knew that he was in pain, and he drove Powers to the place his wife worked so that she could take him to a doctor. Gillory knew that Powers had surgery on his back. Shortly thereafter, one of his employees filled out a first report of accident form for Powers. The filing of an accident report by an employer may be interpreted by the courts as an acknowledgment of notice of the accident and injury. *See, Waymire v. Signal Oil Field Service, Inc.*, 77 N.M. 297, 422 P.2d 34 (1966); *Herndon.* Considering the totality of the circumstances the trial court could properly find that Gillory had actual notice of Powers' accidental injury.

The notice was timely. The time for giving notice begins to run when an employee knows, or by the exercise of reasonable diligence should know, that he has sustained an accidental injury. *Bell v. Kenneth P. Thompson Co.*, 76 N.M. 420, 415 P.2d 546 (1966). In that Powers' injury while working for Gillory resulted from an internal degeneration of a body part rather than an external incident, he could not have been expected to give notice until after the injury manifested itself on January 29, 1979. The cases cited by Gillory, *Hammond v. Kersey*, 83 N.M. 430, 492 P.2d 1293 (Ct. App.1972) and *Bell*, where the courts found there was no notice when the employer was not informed of the date the accident occurred, are not applicable. The disabilities involved in those cases were claimed as the result of specific external accidental incidents, and not, as here, as the result of an internal body malfunction. Within thirty days, Gillory knew as much as Powers himself did about the accidental injury of January 29, 1979.

## Liability of Second Insurer

There are two rules generally used in determining which of two insurance companies is liable in second injury cases. One rule, frequently referred to as the Massachusetts-Michigan rule, *see generally*, 4 Larson, Workmen's Compensation Law §§ 95.12 and 95.31 (1980), is that the second insurer is liable if the second injury contributed even slightly to the cause of the disability. *Rock's Case*, 323 Mass. 428, 82 N.E.2d 616 (1948). The other rule, known as the Florida rule, *Hanks v. Walker*, 60 N.M. 166, 288 P.2d 699 (1955), is that the insurance company covering the risk at the time of the first injury pays if the second injury is the result of the first injury from which the workman has never recovered, and is a manifestation of the continuance of that injury. *Brewer v. Pan American Airways, Inc.*, 156 Fla. 812, 24 So.2d 521 (1946). Both rules have been cited with approval in New Mexico. *See, Hanks; Perea v. Gorby*, 94 N.M. 325, 610 P.2d 212 (Ct.App.1980); *Ponce v. Hanes L'Eggs Products, Inc.*, 91 N.M. 112, 570 P.2d 943 (Ct.App.1977). A third alternative, used in some states, is apportionment. 4 Larson, Workmen's Compensation Law §§ 95.00 and 95.31 (1980); 16 Willamette L.Rev. 137 (1979). Apportionment has not been used in New Mexico. The Legislature has not enacted a statute allowing it, and the issue of whether it should be used, absent a statute, has not been before this court before. The desire to treat both insurance companies equitably is the principle behind apportionment. *See, Anderson v. Babcock & Wilcox Co.*, 256 N.Y. 146, 175 N.E. 654 (Ct.App.1931). Some states have rejected judicial apportionment on the grounds that the percentage liabilities would be mere speculation, *Baxter v. Smith*, 211 Tenn. 347, 364 S.W.2d 936 (1962), and that the decision to allow apportionment should be made by the legislature and not the courts. *Johnnie's Produce Co. v. Benedict & Jordan*, 120 So.2d 12 (Fla.1960); *Baxter*. To these objections could be added the one that apportionment could lead to increased litigation between insurance companies which in turn might result, as it did in this case before us, in a delay in paying the workman the benefits to which he is justly entitled while the insurance companies fight over the percentage amount each is to pay. While in each individual case it might not be entirely fair that one company should bear the entire burden, in the long run each company will likely insure as many first employers as second employers, and its respective liability will even out.

In the present case, the trial court found that the injury suffered while Powers was working for Gillory was a proximate cause of his disability. Gillory argues that there is insufficient evidence to support this finding of proximate cause. In support of this contention, he cites Dr. Moon's testimony that Powers' lifestyle was the cause of his problem.

Considering the evidence along with all reasonable inferences which may be drawn from it in the light most favorable to support the findings of the trial court, *Moorhead*, and disregarding unfavorable evidence, *Marez*, we cannot agree that the finding is in error. Besides the testimony referred to above, Dr. Moon also testifies that there was a direct relation between Powers' work and his present condition, and that this work contributed to the protrusion of the disc. He said in his deposition that the continued work as a rock mason was one of the causes of the progression of Powers' back condition. Considered in a favorable light, the evidence which supports the trial court's finding of causal disability is substantial. Substantial evidence is relevant evidence which a reasonable mind accepts as adequate to support the conclusion. *Id.* The findings of the trial court in a workman's compensation case will not be disturbed on appeal if they are supported by substantial evidence. *Id.* Since there is substantial evidence to support the trial court's finding that the accidental injury sustained while working for Gillory was the proximate cause of Powers' disability, we will not disturb this finding.

Gillory contends that *Perea* is controlling and requires that the first employer be held liable. We disagree. In that case

we allowed a workman who suffered two injuries while working for two different employers to sue his first employer for compensation benefits. The second employer was a business located in California. The issue in that case was not, as between two insurance companies, which one should pay, but whether the first insurance company could be held liable. The second employer was not a party to the suit.

The judgment is affirmed, excepting that portion of it which apportions the compensation benefits between the two employers and their respective insurance companies. The trial court is ordered to enter a judgment against Rufus Gillory Masonry Company and Transamerica Insurance Company for the entire amount. Plaintiff is awarded $1,500 for attorney's fees on this appeal.

IT IS SO ORDERED.

WALTERS, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I dissent.

Judgment for plaintiff was entered January 24, 1980. Over 10 months have passed. Defendant insurance carriers have withheld compensation benefits to a workman, which benefits both agree are due and payable by one or the other of the defendants. This crass concern for the care of a workman totally disabled, one with a family, does not deserve the respect of appellate courts on review. It violates the spirit of the Workmen's Compensation Act. Payment during this period, with a reasonably protective stipulation, dependent upon the ultimate determination of liability, should have been made. Neither of the insurance carriers should profit by the retention of funds to the detriment of a workman and his family.

The trial court made the following pertinent facts:

*    *    *

3. On June 3, 1976, Plaintiff was employed by * * * Riccobene * * * [And]

4. * * * in the course and scope of his employment, suffered an accident resulting in an injury to his back.

*    *    *

6. On January 29, 1979, Plaintiff was employed by Defendant * * * Gillory * *

7. While working for Gillory between August, 1978 and January 29, 1979, Plaintiff suffered a herniated disc.

8. On January 29, 1979, Plaintiff left work early because of pain in his back and has not returned to any occupation.

*    *    *

10. Plaintiff is presently 100% disabled.

11. *Plaintiff's present disability was proximately caused by the accident of June 3, 1976.*

12. *Plaintiff's present disability was proximately caused by the aggravation of the June 3, 1976 accident by an operative accident* that Plaintiff suffered between August, 1978 and January 29, 1979 while working for Defendant Gillory.

*    *    *

20. Plaintiff's disability is proximately caused to the extent of 70% by the accident of June 3, 1976, and 30% *by the aggravation thereof by the operative accident* incurred while working for the Defendant Gillory. [All emphasis added.]

The trial court worded its findings No. 11 and 12 to attempt to make applicable the rule of apportionment of the payment of workmen's compensation benefits by two different employers. The meaning of the phrase "by an operative accident" used in findings No. 12 and 20 is unknown. The trial court obtained the words "operative accident" from one of the cases that a lawyer below quoted in argument. The arguments were not recorded, a usual lack of reasonable care on the part of lawyers. That phrase did not appear in any of the briefs filed in this Court and its meaning has not been defined in Words and Phrases. If the phrase is omitted as mere surplusage, the trial court's facts made read:

Plaintiff's present disability was proximately caused by the accident of June 3,

1976, and this disability was aggravated by that which plaintiff suffered between August 1, 1978 and January 29, 1979 while working for defendant Gillory.

There are two reasons why "operative accident" should be considered surplusage. The court found additionally (1) that "Plaintiff's present disability was proximately caused by the [Riccobene] accident of June 3, 1976" and (2) "Plaintiff's disability is proximately caused to the extent of 70% by the [Riccobene] accident of June 3, 1976, and *30% by the aggravation thereof * * *"* while employed by Gillory. [Emphasis added.] These additional findings convince me that the trial court meant the "aggravation" theory rather than the second accidental injury theory.

*Perea v. Gorby*, 94 N.M. 325, 610 P.2d 212 (Ct.App.1980) is an aggravated back injury case. Perea suffered a disabling compensable injury on March 22, 1977, while working for Gorby. In March or April, 1978, Perea went to work at Oceanside Ice Company as a block supervisor. On May 4, 1978, Perea bent over to show a crew member how to engage a pallet jack and when he straightened up he had intense pain in his back. Gorby claimed that Oceanside was liable for payment of Perea's compensation benefits because his preexistent injury was aggravated during his employment with Oceanside. We held that the second injury at Oceanside was the result of the first injury at Gorby from which Perea never recovered and Gorby, therefore, was liable for payment of Perea's workmen's compensation benefits.

Under *Perea*, aggravation of a preexistent back injury is not a second accidental injury.

If the phrase "operative accident" is held not to be surplusage, what is meant "by the aggravation of the June 3, 1976 accident by an operative accident"? Have we left the field of "aggravation" and entered the field of a second accidental injury? The majority opinion interprets this language "to mean that while working for Gillory, Powers suffered a compensable injury as described in § 52–1–28 * * *." By this process of reasoning, "aggravation" is deleted

and the "operative accident" was held to mean a second accidental injury.

The majority and dissenting opinions "interpret" the court's finding No. 12 surplusage-wise to escape the apportionment theory of payment of workmen's compensation benefits. The burden is really upon the trial court to determine whether the Gillory employment was merely an aggravation of the preexistent Riccobene injury or whether it was a second accidental injury. Perhaps this is the best solution. The trial court was placed in a quandary. It sought a just and fair result and found one under a theory not yet acceptable in New Mexico.

The majority opinion also states that "One rule * * * the Massachusetts-Michigan rule * * * is that the second insurer is liable if the second injury contributed even slightly to the cause of the disability. *Rock's Case*, 323 Mass. 428, 82 N.E.2d 616 (1948)." I disagree. *Rock's Case*, as discussed in *Perea*, involved a back injury in which the insurer of the *first* injury which occurred in 1943, was held liable to pay all compensation benefits even though the workman, while employed by the second employer in 1946 was hurt in the same region while lifting a barrel and was unable to work again until April 29, 1947, and then could work only part time. That which the court meant by "a contributing cause of the subsequent disability" was "an independent intervening cause for his subsequent incapacity." The use of the phrase "even to the slightest extent" was an anomaly that is often mistakenly inserted in a judicial opinion.

In the instant case, the trial court did not find that the second injury operated as a separate independent intervening contributing cause of Power's disability. *Rock's Case* directly supports Gillory's position that Riccobene is liable for payment of all workmen's compensation benefits.

*Perea* established the following rules to apply where a workman suffers injuries under successive employers:

(1) Where the second injury of a workman is an aggravation of the first injury,

the employer of the workman during the *first* injury is liable for payment of all workmen's compensation benefits, or

(2) Where the second injury is not a recurrence of the first injury but a result of that injury *from which he had not recovered*, the same conclusion is reached.

(3) Where the second injury is an independent intervening contributing cause of the workman's disability, the employer of the workman during the *second* injury is liable for payment of all workmen's compensation benefits.

The judicial approach to these conclusions is based upon the duty of the first employer to compensate an injured workman until liability has ended by way of payment, settlement or the occurrence of a subsequent independent intervening cause in accordance with law. When liability has ended, so has payment of compensation ended. This approach is in keeping with the spirit of the Workmen's Compensation Act. It is reasonable and fair. The first employer or insurance carrier, both experienced in workmen's compensation law, should not escape liability for an injured workman in hopes that in subsequent employment the injured workman will again be injured.

The judgment should be affirmed. The trial court should be ordered to enter judgment against Riccobene and United States Fidelity and Guaranty Company for the entire amount. Plaintiff should be awarded $2,500.00 for attorney's fee in this appeal. Costs should be paid by Riccobene.